## CITY OF NEW YORK *v.* NEW YORK, NEW HAVEN & HARTFORD RAILROAD CO.

No. 203.  Argued December 19, 1952.—Decided January 12, 1953.

*Meyer Scheps* and *Seymour B. Quel* argued the cause for petitioner.  With them on the brief were *Denis M. Hurley, Harry E. O'Donnell* and *Anthony Curreri.*

*Edward R. Brumley* argued the cause for respondent.  With him on the brief was *Robert M. Peet.*

Mr. Justice Black delivered the opinion of the Court.

The question presented is whether under the circumstances of this case reorganization of the respondent railroad under § 77 of the Bankruptcy Act[1] destroyed and barred enforcement of liens which New York City had imposed on specific parcels of the railroad's real estate for street, sewer and other improvements. The improvements were made and the liens were all laid prior to 1931. Reorganization was begun in the District Court in 1935. Subsequently, acting pursuant to subdivision (c)(7) of § 77 the court issued an order directing "creditors" to file their claims by a prescribed date, after which unfiled claims would be denied participation except for "cause shown." The railroad was required to mail copies of the order to mortgage trustees or their counsel and to all creditors who had already appeared in court. Other creditors had to depend for their notice on two once-a-week publications of the order in five daily newspapers, one of which was the Wall Street Journal.[2] New York thus received no copy of the bar order. Its lien claims were never filed.

The court's final decree provided for transfer of the old railroad's properties to the newly organized company free from the city's liens.[3] Jurisdiction was reserved to consider and act on future applications for instructions concerning disputes over interpretation and execution of the decree. Pursuant to this reservation the railroad brought the present action alleging that the city in failing to file had forfeited its claims; the railroad prayed for a declaration that the liens were forever barred, void and unen-

[1] 47 Stat. 1474, as amended, 49 Stat. 911, 11 U. S. C. § 205.

[2] The other newspapers were located in Connecticut, Massachusetts and Rhode Island.

[3] The city has contended strongly that the decree should not be so construed, but we find it unnecessary to discuss this question.

forcible, and that the real property was discharged and released therefrom. The District Court agreed with the railroad and enjoined enforcement of the liens. 105 F. Supp. 413. The Court of Appeals affirmed, Judge Frank dissenting. 197 F. 2d 428. In both courts the city made several arguments only two of which we need consider here: (1) Since the lien claims were collectible only out of specified parcels of real estate, the city was not a "creditor" of the railroad and consequently was not required to file its claims in bankruptcy court; (2) in the absence of actual service of notice on the city, the court was without power to forfeit its liens because of its failure to appear as a claimant. To consider these questions we granted certiorari. 344 U. S. 809.

(1) We reject the city's contention that it was not a creditor within the meaning of § 77 of the Bankruptcy Act. Section 77 (b) defines "creditors" as ". . . all holders of claims of whatever character against the debtor or its property . . ." and specifically defines "liens" as "claims." [4] We had reason to comment recently on the broad coverage of this section in *Gardner* v. *New Jersey*, 329 U. S. 565, where we held that state tax liens made states "creditors" for purposes of § 77. True, the state's liens there were general charges against all railroad assets while the liens here are not. New York can look only to each parcel of property on which its liens are laid. But the reasons for our *Gardner* holding are equally ap-

---

[4] ". . . The term 'creditors' shall include, for all purposes of this section all holders of claims of whatever character against the debtor or its property, whether or not such claims would otherwise constitute provable claims under this title, including the holder of a claim under a contract executory in whole or in part including an unexpired lease.

"The term 'claims' includes debts, whether liquidated or unliquidated, securities (other than stock and option warrants to subscribe to stock), liens, or other interests of whatever character." 11 U. S. C. § 205 (b).

plicable here.  New York is a "creditor" in the statutory sense and consequently was required to file its claims in bankruptcy unless freed from that duty by lack of adequate notice.

(2) Section 77 (c) (8) of the Act states that "The judge shall cause reasonable notice of the period in which claims may be filed, . . . by publication or otherwise." 11 U. S. C. § 205 (c) (8).  We hold that publication of the bar order in newspapers cannot be considered "reasonable notice" to New York under the circumstances of this case.

Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice.  Its justification is difficult at best.  See *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306.  But when the names, interests and addresses of persons are unknown, plain necessity may cause a resort to publication.  See, *e. g., Standard Oil Co.* v. *New Jersey*, 341 U. S. 428.  The case here is different.  No such excuse existed to justify subjecting New York's claims to the hazard of forfeiture arising from "constructive notice" by newspaper.  In the first place subdivision (c) (4) of § 77 is designed to enable the court to serve personal notices on creditors.  It provides that "The judge shall require . . ." proper persons to file in the court a list of all known creditors, the amount and character of their claims and their last known post-office addresses.  This was not done here.  Had the judge complied with the statute's mandate, it is likely that notice would have been mailed to New York City.  Moreover, the railroad and the bankruptcy trustees knew about New York's asserted liens.  And there was at least as much reason to serve a mail notice on New York City as on representatives of the railroad's mortgagees.  Their liens were subordinate to New York's.  There was even more reason to mail notice to the non-appearing known creditor New York City than to the creditors who had actually filed appearances as claimants.

Nor can the bar order against New York be sustained because of the city's knowledge that reorganization of the railroad was taking place in the court. The argument is that such knowledge puts a duty on creditors to inquire for themselves about possible court orders limiting the time for filing claims. But even creditors who have knowledge of a reorganization have a right to assume that the statutory "reasonable notice" will be given them before their claims are forever barred. When the judge ordered notice by mail to be given the appearing creditors, New York City acted reasonably in waiting to receive the same treatment.

The statutory command for notice embodies a basic principle of justice—that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights. New York City has not been accorded that kind of notice.

*Reversed.*

MR. JUSTICE FRANKFURTER and MR. JUSTICE JACKSON doubt that a city whose only claim is *in rem* and which has no standing to participate in the general estate is a creditor in the sense of § 77 (b). But whether New York is or is not such a creditor, they agree with the opinion that the notice in this case is not adequate support for an order destroying the liens.