In re OXRIDGE INVESTMENT GROUP, Debtor.

In re BICENTENNIAL PROPERTIES, Debtor.

In re CHESELL ASSOCIATES, Debtor.

In re FIRST CABLE INVESTMENT GROUP, Debtor.

In re FIRST CENTER INVESTMENT GROUP, Debtor.

In re GRAYSTONE INVESTMENT GROUP, Debtor.

In re HAMILTON INVESTMENT GROUP, Debtor.

In re KENSWORTH ASSOCIATES, Debtor.

In re KIDDERBRIDGE INVESTMENT GROUP, Debtor.

In re LAFAYETTE INVESTMENT GROUP, Debtor.

In re MADISON INVESTMENT GROUP, Debtor.

In re NORMANDY INVESTMENT GROUP, Debtor.

In re PICKWICK INVESTMENT GROUP, Debtor.

In re SOUTHWICK INVESTMENT GROUP, Debtor.

In re TELLAND INVESTMENT GROUP, Debtor.

In re STEWART MEYERS and COMPANY, INCORPORATED, Debtor.

In re Robert M. STEWART, Debtor.

In re James R. MEYERS, Debtor.

Bankruptcy Nos. 80–151, 80–205 to 80–218, 80–279, 80–312 and 80–313.

United States Bankruptcy Court, D. New Hampshire.

Oct. 23, 1984.

John R. Michels, Londonderry, N.H., Trustee.

Herrick & Smith, Boston, Mass., for Trustee.

John C. Ransmeier, Ransmeier & Spellman, Concord, N.H., for N.H. Ins.

## MEMORANDUM OPINION and ORDER

JAMES E. YACOS, Bankruptcy Judge.

The matter before the court is the Petition of the New Hampshire Insurance Company (hereinafter "NHIC") filed on July 6, 1983 seeking leave to file a formal proof of claim, also submitted on July 6, 1983, subsequent to the April 6, 1983 claims bar date established by this court's prior order of September 23, 1982. The claim in question is in the amount of $783,018.95, based upon wrongful conduct of Robert M. Stewart, one of the debtors in these consolidated proceedings, in his administration of the estate of Carl T. Witherell (hereinafter the "Witherell Estate") in a probate proceeding in which NHIC was the surety for Stewart's probate bond as executor of the estate.

There is no controversy about the losses caused by Stewart's actions in this context, and any proof of claim that may be allowed would go against all the assets of all the debtors in these proceedings inasmuch as the court entered an order of substantive consolidation in this case on May 14, 1982.

The trustee objects to NHIC's claim purely on the basis of its untimely filing under the claims bar deadline established by the prior court order. NHIC counters that it in effect asserted its claim by prior writings placed in the hands of the trustee and that the formal proof of claim can properly be considered an "amendment" of those prior writings consistent with bankruptcy law principles relating to the finality of claim deadlines.

NHIC also contends that the trustee violated court requirements to give it specific notice of the claims bar order as a "known creditor" and that this failure violated the due process of law to which it was entitled.

NHIC finally contends that it was entitled to a "commercially reasonable" period after the April 6, 1983 deadline within which to file its proof of claim as surety, in accordance with § 501(b) of the Bankruptcy Code, since the Witherell Estate, its principal, failed to file a proof of claim for these damages prior to the April 6, 1983 deadline.*

---

\* The Witherell Estate did file a proof of claim for the embezzlement damages on June 23, 1982, but the question of the timeliness of that proof of claim is not presently before this court. On June 28, 1983, NHIC paid the Witherell Estate $700,000.00 in full settlement of its suretyship

Most of these related bankruptcy proceedings were filed before May 14, 1982. The individual proceedings relating to Robert Stewart and James Meyers were filed on May 28, 1980. The cases created a great deal of notoriety and caused considerable public comment throughout New Hampshire at the time of their filing. The extensive commingling of funds and interrelated activities of the various debtors created considerable confusion which ultimately led to the order of substantive consolidation described above.

Prior to May 14, 1980, the attorney for NHIC contacted the trustee in bankruptcy appointed in all of the cases then filed and discussed the contingent claim of NHIC in the event it was held liable on its bond to the Witherell Estate. The attorney, John C. Ransmeier, asked about the appropriate procedure for asserting a claim in the confused circumstances, and was told by the trustee that he ought to "put something in writing" back to the trustee.

Ransmeier thereupon sent the trustee a letter dated May 14, 1980, under a caption stating "Bankruptcies of Stewart Meyers and Companies Investment Groups—Claims of New Hampshire Insurance Companies Derived from Probate Bonds for Carl T. Witherell Estate", and stating in the body of the letter the following:

"I recently advised you on the phone that this office represents New Hampshire Insurance Company ("NHIC"), which issued the probate bond for the Carl T. Witherell Estate, of which Robert M. Stewart was executor. It is our present understanding that Robert M. Stewart has admitted to staff of the Attorney General's Office that he embezzled funds both from the Carl T. Witherell Estate and from Twin Cable TV, Inc. ("Twin State"), a corporation wholly owned by the Carl T. Witherell Estate. We understand that these funds may well have been diverted into at least some of the fifteen Stewart Meyers & Co. investment groups for which you are now acting as trustee.

"We wish hereby formally to inform you that NHIC is interested in these bankruptcies as a result of the possibility that NHIC may be required to pay claims based on Robert M. Stewart's failure to perform his lawful duties as executor and that, if it pays such claims, NHIC may itself have claims against any investment groups which benefited from Stewart's embezzlement of funds properly belonging either to the Witherell Estate, or to Twin State.

"We understand that you are going to be retaining accountants, as well as the Boston law firm of Herrick & Smith, to advise you with respect to the movement of funds into, from, and between various investment groups for which you are acting as trustee, and to advise you with respect to the rights of various interested persons and entities. When your investigations are completed, we would appreciate learning any information you may acquire with respect to the extent of losses sustained by the Carl T. Witherell Estate and by Twin State, and, also, any information you may acquire identifying which, if any, of the various investment groups may have benefited by the receipt of funds properly belonging either to the Estate or to Twin State.

"May we ask you please to be in touch with us when you, your accountants, and your attorneys are in a position to give us information on these points sufficient to assist us. In the interim, we understand from you that this letter will serve to protect the interest of New Hampshire Insurance Company with respect to any claims which it might assert against any of the fifteen investment groups for which you are acting as trustee. If our understanding is incorrect, please advise us what you would have us file, and we will promptly do so."

In July of 1980, due to the numerous parties involved in and inquiring about the various "Stewart-Meyers" bankruptcy proceedings, the then bankruptcy judge directed that the trustee send a letter to credi-

liability to the estate and took an assignment of the estate claim.

tors, advising that if they wanted to be on the "notice list" for further information as to the progress of the proceedings that they reply in writing to the trustee. The trustee did not include Ransmeier or NHIC in his July 1980 letter to creditors. He also never gave any written reply to Ransmeier's letter of May 14, 1980.

During the 1980–1982 period, Ransmeier had numerous conferences with the trustee concerning possible assets recoverable for the bankruptcy estate and generally concerning the progress of the bankruptcy proceedings. The trustee noted in his testimony that he had no more contacts with any one creditor then with Ransmeier. Ransmeier even prepared an extensive memorandum [Sealed Exhibit Number 7] concerning the possible asset recoveries and sent a copy of the same to the trustee at the latter's request. It would be apparent to anyone that Ransmeier would have no reason to engage in these activities with the trustee except by virtue of the contingent claim liability that NHIC had under its probate bond for Robert Stewart in regard to the Witherell Estate.

Ransmeier, for whatever reason, kept inquiring of the trustee as to whether a claims deadline had yet been established rather than just filing a contingent proof of claim. On December 24, 1980, Ransmeier sent a second letter to the trustee, as a follow-up to a conference in which the trustee had again advised that no claims bar order had been established. In this letter Ransmeier stated:

"After speaking with you on the telephone the other day, I called Terry Seligman at Herrick & Smith to check on your counsel's views on the proof of claim matter we discussed, and I reviewed the applicable bankruptcy rules. As a result of that effort, it seems to me prudent formally to advise the Bankruptcy Court of the potential interest of New Hampshire Insurance Company in the various bankruptcy proceedings which are now pending. Terry told me that she thought you had a listing of the Stewart-Meyers bankruptcy cases now pending. Could I ask you please to send along a list of the cases, indicating for each case the date when the bankruptcy was filed and the docket number for the case in the Bankruptcy Court's files.

"If there is any problem with this request, please give me a call. Many thanks for your assistance and best wishes for the holidays."

The trustee did not respond in writing to the December 24, 1980 letter, and Ransmeier never filed anything directly with the Bankruptcy Court prior to the proof of claim of July 6, 1983. He did file notices of appearance in various adversary proceedings in the debtor cases, but apparently did not file any notice of appearance in the general court file for any of the debtor cases.

In September of 1982 the pending Chapter 11 proceedings in these cases were converted to Chapter 7 liquidation proceedings, and on September 23, 1982 the court entered its claims bar order establishing the April 6, 1983 deadline and directing that the trustee mail a notice of the same "to all known creditors of the debtors" among other parties.

The trustee mailed the claims deadline notice to the listed creditors in the debtor's schedules, together with additional parties culled from in excess of 400 letters the trustee had in his files inquiring about these bankruptcy proceedings. He testified that he selected from these letters those parties who clearly asserted some claim against the estate. He did not include NHIC in this mailing.

In February of 1983 the Witherell Estate made a claim against the probate bond and NHIC entered into negotiations with the Witherell Estate. These negotiations culminated in the June 1983 settlement described above.

On April 6, 1983, while in another attorney's office in Concord, New Hampshire, Ransmeier fortuitously learned of the April 6, 1983 claims deadline, when the lawyer he was visiting remarked that he was about to file a proof of claim in these cases. Ransmeier requested the lawyer to have a call

placed to the bankruptcy court offices in Manchester, New Hampshire to determine whether the Witherell Estate had filed their proof of claim. When advised that the response was in the affirmative Ransmeier did nothing further under the assumption that the Witherell Estate would have included the "embezzlement" damages in its proof of claim. As it turned out, the Witherell Estate's claim filed prior to the April 6th deadline was based only upon "investment" losses suffered as a result of various investments in the Stewart-Meyers enterprises, and did not include at that time an assertion of a claim for embezzlement and wrongful diversion damages.

From the foregoing the parties have filed extensive briefs raising numerous issues of law from their respective viewpoints. However, the court believes that the appropriate resolution of this matter boils down to the legal effect of a few salient facts.

The May 14, 1980 and December 24, 1980 letters from NHIC's attorney to the trustee clearly gave notice that NHIC was an interested creditor in the proceedings. The fact that the claim at that time was contingent is of no legal relevance, since the Bankruptcy Code expressly includes contingent claims within its "creditor" definition. *See Code, §§ 101(4) and 101(9).*

■ It is well-established in bankruptcy law that as long as a writing giving notice of a claim is placed in the hands of the trustee, before the expiration of the claims deadline, the claim thus asserted can later be amplified by a more formal proof of claim. 3 *Collier on Bankruptcy,* 14th Ed., § 57.11 (1980); *In re Franciscan Vineyards, Inc.,* 597 F.2d 181 (9th Cir.1979). These authorities, arising under the prior Bankruptcy Act, are still valid since there are no changes in the 1978 Code which would require a different result.

The "liberality of amendment" approach comes into play only when there is some writing asserting the claim within the deadline. But once that is shown, liberality is especially to be encouraged where, as here, there is no prejudice to the estate created by giving leave for the late filing of a formal proof of claim. See *In re Franciscan Vineyards,* supra, at p. 183.

■ The court concludes that the "assertion" of the claim in the present instance, although arguably vague, was understandable and sufficient in the circumstances.

■ Even if the letters were not sufficient to support a subsequent "amendment" under the foregoing authorities, the court still would be constrained to reach the same result on the basis that the trustee was under an affirmative duty to give notice of the claims deadline to all "known creditors" and failed to do so in this instance. Cf. *New York v. N.Y., N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *In re Harbor Tank Storage Co.,* 385 F.2d 111 (3d Cir.1967); *In re Intaco Puerto Rico, Inc.,* 494 F.2d 94 (1st Cir.1974).

The court is not unmindful of the burden it would be for trustees to have to review all correspondence to ferret out any possible assertion of claims in the many letters they receive. It is sufficient in the present case, however, to simply find and conclude on the evidence that by the time of the September 1982 claims bar order NHIC had become a "known creditor" entitled to notice of the claims deadline.

### ORDER

It is accordingly ordered that New Hampshire Insurance Company is granted leave for the filing of its Proof of Claim dated July 6, 1983, and the trustee shall have 30 days from date within which to file any objections to said claim, if any he has, other than on grounds of lateness.