**In re JEWELART, INC., Debtor.**

**Bankruptcy No. LAX 82–12499–SB.**

United States Bankruptcy Court,
C.D. California.

April 6, 1987.

Diane C. Weil of Danning, Gill, Gould, Diamond & Spector, Los Angeles, Cal., for trustee.

George E. Schulman, Los Angeles, Cal., for the FTC.

## AMENDED MEMORANDUM OF DECISION

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

David A. Gill, the Chapter 7 Trustee in this case, applies for authorization to close this case. While the estate has assets totalling some $190,000, an entire class of creditors has not been given notice of the filing of the case at all, or of a bar date for filing claims.

The class lacking notice may include as many as two million unidentifiable creditors of this estate, whose claims are likely to be less than $1,000 each. The trustee estimates that he has approximately $65,-000 on hand to distribute to any such claimants, as well as to claimants of the same class who have filed timely claims totalling approximately $45,000. The trustee desires to avoid notice to these possible claimants, and to use the funds on hand to pay existing claims only.

### II. FACTUAL BACKGROUND

An involuntary bankruptcy petition was filed on July 27, 1982 against Jewelart, Inc. An order for relief under Chapter 11 of the Bankruptcy Code was entered on August 25, 1982. On September 13, 1983 the case was converted to a case under Chapter 7.

Prior to the filing of this case, Jewelart was engaged in the business of selling inexpensive costume jewelery by mail order. Before the case was filed, Jewelart had received orders from a large number of mail order customers, whose orders were unfilled at the time of filing. (These possible claimants will be referred to hereafter as "prospective consumer claimants.")

The number of prospective consumer claimants is uncertain. Jewelart's schedules, filed before the trustee was appointed, state that Jewelart had received deposits, each in an amount less than $900, for unfilled orders from approximately 8,200 customers. The Federal Trade Commission ("FTC"), which was granted leave to appear in this case as an interested party, has received some 40,000 letters about Jewelart, and estimates that there may be as many as two million possible consumer claimants.

The demise of Jewelart has stimulated a substantial amount of consumer interest. Articles by consumer columnists have appeared in numerous newspapers through-

out the United States, and have stimulated the flow of letters to the FTC.

Some 768 consumer claims, totalling approximately $45,000, were filed before the bar date. These claims include two claims from the state of Kansas, filed on behalf of a total of 107 claimants, which include civil penalties totalling $15,250. The average loss claimed on the existing consumer claims is less than $35. After the payment of higher priority and secured debts, there remain approximately $65,000 to pay to the prospective and existing consumer creditors.

The bar date for filing claims against the estate was set for July 16, 1984. However, no notice has been given to the prospective consumer creditors, notifying them of the bar date or of their right to file claims. It appears that most claims of the prospective consumer claimants, if asserted, will not exceed $1,000.

The trustee believes that the vast majority of the prospective consumer claimants are low-income, rural residents. The debtor has no records of the deposits that were received, nor of the identity of the persons from whom they were received. The only record that the trustee has found is a mailing list, which is now at least five years out of date, containing some two million names. The mere cost of mailing a communication to two million possible claimants would likely consume most of the funds available.

The trustee objects to giving notice by publication, because any publication that may be effective in conveying notice to the prospective consumer claimants would itself consume much of the $65,000 available. The FTC has proposed that the trustee be required to place an advertisement in a magazine such as TV Guide, which would be calculated to reach the majority of the prospective consumer claimants. While TV Guide is the weekly magazine with the largest distribution in the United States, the cost of advertising in it is commensurately high: The trustee asserts that it would cost more than $20,000 to run an advertisement of reasonable size in one weekly issue.

The trustee claims that he is able to purchase advertising in the classified or legal notices section of eight newspapers of general circulation in different geographic areas of the country for between $3,000 and $5,000. However, the trustee expresses doubts as to whether such advertising would be reasonably calculated to reach the average prospective consumer claimant in this matter, because such persons are not likely to read the newspapers, are not likely to notice such advertisements, or do not live in the major metropolitan areas where such newspapers are distributed.

In short, the trustee believes that effective notice to the prospective consumer claimants is not possible in this case. On the one hand, he contends, notice reasonably calculated to reach all of the prospective claimants would consume a substantial portion of the funds available for distribution on such claims. On the other hand, he contends, any notice given at reasonable cost would not be reasonably calculated to reach the prospective claimants.

The trustee complains of two further problems. First, a substantial inflow of small claims would dilute the creditor body and reduce the average dividend to less than five dollars: Pursuant to Bankruptcy Rule 3010(a)[1] such dividends would not be payable (unless otherwise ordered by this Court). If a large number of claims is received, only the claimants with the largest claims would receive a distribution.

Second, the trustee complains that a substantial inflow of claims could easily exhaust all of the available assets in increased administrative expenses. The costs of analyzing a substantial flow of claims, the trustee states, could consume the available funds, and nothing would be left to distribute to the claimants.

The FTC has suggested that the trustee donate the unclaimed portion of the $65,000

---

1. Bankruptcy Rule 3010(a) provides (in relevant part):

In a Chapter 7 case no dividend in an amount less than $5 shall be distributed by the trustee to any creditor unless authorized by local rule or order of the court.

to the FTC for enforcement of the mail order rule,[2] or that the trustee donate these funds to a suitable charity. The trustee declines, citing a lack of statutory authority. The trustee suggests that he could file a claim on behalf of the FTC[3] for these funds, thereby imposing on the FTC the responsibility for distributing them. The FTC declines to accept the funds under such circumstances, again citing the lack of statutory authority.

## III. ANALYSIS

### A. Notice

The requirement that notice of a claims bar date be given to creditors has due process dimensions. In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed.2d 865 (1950), the United States Supreme Court stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance.... But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.

339 U.S. at 314–15, 70 S.Ct. at 657 (citations omitted). Thus the purpose of the notice requirement is to advise individuals who will be affected by the outcome of any proceeding so that they can take steps to safeguard their interests. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1562–63, 56 L.Ed.2d 30 (1978). Similarly, the Ninth Circuit Bankruptcy Appellate Panel has recently held: "Due process of law mandates notice be given to a creditor whose property rights are being affected so that he may have his day in court." *Lubeck v. Littlefield's Restaurant Corporation (In re Fauchier)*, 71 Bankr. 212 (9th Cir.BAP 1987).

The leading case on notice to creditors of a bar date in a bankruptcy case is *City of New York v. New York, New Haven & Hartford Railroad*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), which involved notice of a bar date for the filing of claims in a railroad reorganization case under section 77 of the Bankruptcy Act. The United States Supreme Court reversed the discharge of a lien held by the City of New York, which had not filed a claim in the case, on the grounds that the City was not given the "reasonable notice" of the bar date required by section 77(c)(8) of the Act. The Court held that "reasonable notice" required individual notice by mail to known creditors of the estate, in addition to the notice that had been given by publication in the Wall Street Journal and four other daily newspapers in the railroad's region.

■ While this is a Chapter 7 case instead of a railroad reorganization, notice to creditors of the bar date (or substantially equivalent notice)[4] is required in order to satisfy due process.

No bankruptcy case has been discovered that addresses the due process considerations of notice to a large number of creditors with small potential claims, where the costs of notice and of administration may

---

**2.** Mail Order Merchandise, 16 C.F.R. § 435 (1986), adopted by the FTC on October 22, 1975, imposes certain requirements on the sale of merchandise by mail order, and gives both buyers and the FTC enforcement rights in case of violation of the requirements. The FTC claims that the debtor systematically violated this rule before this case was filed.

**3.** Bankruptcy Code § 501(c), 11 U.S.C. § 501(c) (1979), provides:

> If a creditor does not timely file a proof of such creditor's claim, the ... trustee may file a proof of such claim.

**4.** In a Chapter 7 case, pursuant to Bankruptcy Rule 3002(c) the bar date is 90 days after the first date set for the meeting of creditors. This notice of the first date set for the meeting of creditors may be sufficient notice of the bar date to satisfy constitutional requirements. The Rule 3002(c) date does not govern this case, however, because the Court specially set the bar date in this case.

easily exceed the funds available. The *Mullane* case, *supra,* however, provides substantial guidance.

Although the *Mullane* case was not a bankruptcy case, like this case it involved a substantial number of small claimants. *Mullane* arose out of New York legislation authorizing the pooling of small trust estates into one fund for investment administration. A common trustee was authorized to settle accounts periodically for the pooled trusts. The only notice required, before a judicial settlement order could be entered, could be given by newspaper publication, setting forth merely the name and address of the trust company, the name and date of establishment of the common trust fund, and a list of all participating trusts. *Mullane* involved a pool of 113 trusts at Central Hanover Bank & Trust Company, with numerous vested and contingent beneficiaries, many of whom were not residents of the State of New York. Many of the beneficiaries had interests that were small or contingent (or both).

The United States Supreme Court in *Mullane* held that the constitutional validity of any method of notice turns on its reasonableness in the circumstances: Where conditions do not make it practical to give notice reasonably certain to inform those affected, the Court held that the form chosen must not be substantially less likely to bring home notice than any other substitute feasible and customary in the circumstances. *Id.,* 339 U.S. at 315, 70 S.Ct. at 657–58. The Court noted that it would be idle to pretend that publication alone is a reliable means of acquainting interested parties with the fact that their rights are before the courts, and that chance alone brings even a local resident's attention to a newspaper advertisement. *Id.* Nevertheless, the Court noted, it has not hesitated to approve publication where it was not reasonably possible *or practical* to give more adequate warning. *Id.,* 339 U.S. at 317, 70 S.Ct. at 658–59 (emphasis added).

The Court found the notice by publication in *Mullane* inadequate, because the notice was not reasonably calculated to reach those who could easily be informed by other means at hand. *Id.,* 339 U.S. at 319, 70 S.Ct. at 659–60.

■ To satisfy the due process requirements of notice to the possible consumer claimants, *Mullane* and *City of New York* require that the trustee give some reasonable notice to the prospective consumer creditors that is practical in the circumstances of this case. In consequence, this case cannot be closed without giving such notice to the prospective consumer creditors and establishing a supplemental bar date for the filing of their claims.

Notice by publication is one form of notice appropriate in this case, because the debtor failed to keep any records of the possible claimants (apart from the outdated mailing list), and notice better than publication may not be possible in this case.

The FTC has volunteered to give notice to consumer columnists who have contacted it concerning Jewelart, and who may publish information concerning the claims bar date and how to file claims. The FTC believes that this will provide more effective notice than the publication of notice by the trustee. In addition, the trustee must give notice to the attorneys general of 49 states (excluding Kansas, whose attorney general has already filed a class claim on behalf of its residents).

The notice provided by the FTC and its consumer columnists, and that to the attorneys general, will supplement the notice by publication. The notice provided by these various means is the best reasonably available in this case, given the limited means of the trustee and the limited funds to be distributed. *Cf. Mullane, supra,* 339 U.S. at 316, 70 S.Ct. at 658.

What manner of publication should be required? The court believes that a reasonable compromise is possible between the substantial expense of nationwide publication in a periodical such as TV Guide, on the one hand, and the failure to give any notice at all. There are several newspapers and weekly journals of substantial national distribution, such as U.S.A. Today, Wall Street Journal, Time and Newsweek. The Court is not persuaded that giving

notice to the prospective consumer claimants in one or more of these publications would be too costly. The publication of a notice in a newspaper of national circulation such as U.S.A. Today or Wall Street Journal most likely would cost less than $10,000. The trustee is authorized to spend up to $10,000 for such notice. However, the court anticipates that the notice will cost substantially less.

■ The Court does not consider it necessary for the debtor to give notice to all of the two million addressees listed on the out-of-date mailing list. While the names of some possible claimants are likely contained on the list, it is likely that a substantial portion have moved in the intervening five years and have left no available forwarding addresses. In addition, a substantial portion of the possible claimants may not appear on the list at all. There is no evidence that any person on the mailing list attempted to make any purchase from Jewelart, or has a claim against the estate: The vast majority of individuals named on the list probably have no such claims. In consequence, the Court concludes that the use of this mailing list would not be reasonably calculated to give notice to the prospective consumer claimants.

■ Similarly, the trustee argues persuasively that individual notice is not feasible to the writers of the 40,000 letters to the FTC. The Court found in *Mullane* that the requirement to search for addresses for the interested parties is no more extensive than what the practicalities of the case permit. 339 U.S. at 317–318, 70 S.Ct. at 658–59. The trustee in this case estimates that it would cost $20,000 to generate a list of addresses from the FTC letters, and an additional $15,000 to send individual notices to the correspondents. The Court considers these cost estimates to be understated, and estimates that notice to these individuals would consume most, if not all, of the available $65,000. Unless the FTC provides a typed list of addresses of these

letter writers, individual notice to these persons will not be required.

This case differs from *Mullane* in two respects. First, publication is here reinforced by steps more likely to attract the attention of interested parties to this case. The FTC believes that the notice that it will initiate will be more effective than the publication by the trustee. *See, Id.*, 339 U.S. at 316, 70 S.Ct. at 658. Second, there are no more reasonable means at hand to inform the potential consumer claimants.

The Court holds that the notice to be given as provided herein is the most reasonable and practical available, given the limited resources available to the trustee and the limited funds to be distributed. There is no other method of notice customary in these circumstances, and none that, at the same cost, is more likely to bring home notice to the potential consumer claimants. Thus the notice satisfies the due process requirements as set forth in *Mullane*, in the circumstances of this case.

### B. Claims Administration

■ If notice reasonably calculated to reach most or all of the prospective consumer claimants is given, the Court assumes that a substantial number of claims will be made. The trustee is concerned with the cost of administering the claims that may be filed, because the administration of all of the claims may be unduly expensive.

The Court finds that the cost of administering claims of less than $100 will exceed the likely dividend on them. Accordingly, the Court authorizes the trustee to segregate the claims filed by the prospective consumer claimants into two groups. Claims for less than $100 may be placed in storage by the Trustee, and given no further administration except upon further order of the Court.[5] Such claims need not be docketed, tabulated, recorded, transmitted to the clerk's office, or given any other attention. Claims of at least $100, on the

---

**5.** Whether the consumer claims for less than $100 that were filed before the original bar date should share fully in the consumer claim dividend (except those where the dividend is less than five dollars and is not payable pursuant to Bankruptcy Rule 3010(a), *see* note 1, *supra* ) will be determined by the Court at a later date.

other hand, should be separated and tabulated for consideration for further administration. The Court contemplates that these claims will not be too numerous to administer and to share in the $65,000 available.

Because the Court intends that the trustee disregard any claims that may be filed for less than $100, the advertisement required by the Court may indicate that such claims will not be considered.

In addition, the advertisement shall require that claims be filed on official forms for proofs of claim. This requirement shall also be set forth in other communications giving notice of the right to file claims and of the bar date. The trustee is authorized to treat claims not on the official form in the same manner as claims of less than $100: He may store them with the claims to be given no further administration.

The bar date for the prospective consumer claimants shall be stated in the published notice, and shall be at least ninety days from the first date of publication of the notice.

■ The trustee also argues persuasively that a review of the 40,000 letters received by the FTC would be prohibitively costly. At the rate of 25 letters per hour, which the trustee found to be feasible, it would take 1,600 hours to review the letters. The cost of such review, even if done by an outside contractor, would be substantial. Because the letters were not addressed to the trustee or filed with the Court, the court does not consider them to be claims that the trustee is required to administer. The trustee may disregard them, unless the FTC analyzes the letters and files a claim on behalf of these writers.

The trustee is further concerned that, in response to the publication of a notice to file claims, his office will be besieged with telephone calls that will tie up the entire office, making it impossible to carry on his business and to discharge his obligations in other cases. The court considers this a legitimate concern. Accordingly, the trustee is authorized to rent a post office box in the name of the debtor, and to direct that all claims be addressed to "Jewelart Trustee" at this post office box. No further identification of the trustee need be given in the advertising.

## IV. CONCLUSION

The Court believes that a modest announcement by publication in one or more of the indicated national newspapers and weekly journals is the best feasible notice to the prospective consumer claimants, given the limited resources available to the trustee. At the same time, such an advertisement will not expend a substantial portion of the available resources. The additional notice to be provided by notice to the attorneys general of the states and through the FTC will supplement this notice. The Court finds that this notice satisfies due process requirements, in the circumstances of this case.

The division of the resulting claims into two groups for administration purposes will substantially reduce the administrative costs for processing the resulting claims. The Court contemplates that this task can be performed by a paralegal, without major cost to the estate. The Court also expects that a relatively small portion of the claims will exceed $100: In a sample of the FTC letters examined by the trustee, only one of 43 letters with sufficient information to determine the customer's loss involved a loss of more than $100. The Court expects that it will be feasible to administer the resulting claims.

The division of the claims into two categories is subject to further order of the Court, after information is provided in the costs of administering this portion of the claims process, and after examination of the resulting list of claims exceeding $100.