**In re Walter B. ANDERSON, Debtor.**

**No. 99–40093–7.**

United States Bankruptcy Court, D. Kansas.

Aug. 14, 2001.

---

Robert L. Baer, Chapter 7 Trustee, Topeka, KS.

Sheryl Moreau, Special Assistant Attorney General, Missouri Department of Revenue, Jefferson City, MO.

Jay Befort, Kansas Department of Revenue, Topeka, KS.

Jeannie M. Bobrink, Kansas City, MO.

Katja M. Eichinger, Trial Attorney, Tax Division, U S Department of Justice, Washington, DC.

Robert D. Berger, Lentz & Clark PA, Overland Park, KS.

## ORDER ON MOTION TO RECONSIDER ORDER APPROVING TRUSTEE'S FINAL REPORT

JAMES A. PUSATERI, Chief Judge.

This case is before the Court for a determination of the payment priorities of several late-filed tax claims. The claims were filed by the Missouri Department of

Revenue ("MDOR"), the Kansas Department of Revenue ("KDOR"), and the Internal Revenue Service ("IRS"). The trustee for the bankruptcy estate in this case, Robert L. Baer, objects to the claims. Creditor Barbara A. Mitchell also objects. The MDOR appears by counsel Sheryl L. Moreau, Special Assistant Attorney General, Missouri Department of Revenue, General Counsel's Office. The KDOR appears by counsel Jay D. Befort, Legal Services Bureau, Kansas Department of Revenue. The IRS appears by Katja M. Eichinger, Trial Attorney, Tax Division, U.S. Department of Justice. The debtor, who supports the payment of the claims, appears by counsel Jeannie M. Bobrink of Kansas City, Missouri. The trustee appears by counsel Cosgrove, Webb & Oman of Topeka, Kansas. Ms. Mitchell appears by counsel Robert D. Berger of Lentz & Clark of Overland Park, Kansas.

## FACTS

Walter B. Anderson filed a chapter 7 bankruptcy petition in January 1999. A few days later, notice of the filing was sent to the creditors listed on the mailing matrix submitted with the petition. The MDOR was not listed on either the schedules or the mailing matrix. Although the KDOR was listed on the debtor's schedules as a creditor, it was not included on the mailing matrix. The IRS was listed in the schedules and on the mailing matrix. The address given on the matrix for the IRS was a valid address in St. Louis, Missouri, but was not the Kansas address that District of Kansas Bankruptcy Court Standing Order 96-2, then in effect, directed bankruptcy filers to use. The notice sent to creditors stated that no assets appeared to be available from which to pay unsecured creditors, so creditors were advised not to file proofs of their claims until they received directions to do so.

In December 1999, notice was sent to the creditors listed on the mailing matrix that assets had been recovered, and they should file claims. Governmental units were given until June 29, 2000, to file proofs of claim, but no tax claims were filed before that deadline. The debtor did not file any proofs of claim for the MDOR, the KDOR, or the IRS (collectively, "the Tax Claimants"), although Federal Rule of Bankruptcy Procedure 3004 authorized him to do so.

In October 2000, the trustee submitted his final report ("the Report") to the United States Trustee for approval. The Report showed the trustee had received around $22,600 for the debtor's bankruptcy estate, and projected distributing about $18,900 to four unsecured creditors who held about $81,000 in timely-filed claims. The United States Trustee approved the Report a few weeks later, and it was filed with the Court on November 3. The Report was subsequently noticed to creditors and the debtor, who were given until December 20 to object to it. On December 4, the MDOR was the first of the Taxing Authorities to file a proof of claim. It asserted an unsecured priority claim of $5,387.22 and a general unsecured claim of $739.25. On December 7, the debtor filed an objection to the Report, indicating that he owed significant debts to the Tax Claimants and that his counsel had contacted them to try to convince them to file proofs of claim. About a week later, Ms. Mitchell, one of the creditors who had timely filed a proof of claim, filed a response to the debtor's objection, contending that the debtor had no standing to object to the Report, and that it was too late for claims to be filed. On December 15, the KDOR became the second of the Taxing Authorities to file a proof of claim. The KDOR indicated that its claim of $1,862.48 was secured by tax warrants it had filed in state district court, but it also

asserted a contingent priority claim of $1.00 in the event the security was insufficient to pay the claim in full.

At a hearing on the Report on January 25, 2001, the Court sustained Ms. Mitchell's response to the debtor's objection. However, because nothing presented showed that the MDOR had received timely notice of the case or the need to file a proof of claim, the Court allowed the MDOR's claim under 11 U.S.C.A. § 726(a)(2)(C). Because the KDOR had been listed in the debtor's schedules as a creditor (its omission from the mailing matrix was discovered later), the Court concluded that the KDOR did have notice in time to file a timely proof of claim, so its claim was not covered by § 726(a)(2)(C). The Court also ruled that the KDOR's claim did not satisfy § 726(a)(1) because the trustee had "commence[d] distribution" before the claim was filed. At this point, the KDOR was still asserting that its claim was, at least potentially, fully secured. An order approving the trustee's Report was filed on February 16.

Ten days later, the debtor filed a motion to reconsider the order approving the Report. A hearing was held on March 29, and the parties were given a schedule to submit briefs supporting their positions. A number of briefs have now been filed. At some time after the January 25 hearing, it was discovered that the KDOR was not included on the debtor's mailing matrix, even though it was listed in the schedules. This meant that neither notice of the case nor of the need to file a claim had been sent to the KDOR.

While the briefs were being written, the KDOR filed an amended proof of claim on April 3, adding a $21 priority tax claim and $35 general unsecured claim. It also repeated its secured claim of $1,862.48 but increased the contingent priority component of that secured claim to $1,552.23.[1] On

April 19, the IRS became the last of the Taxing Authorities to file a proof of claim, asserting a priority claim of $12,384.50 and a general unsecured claim of $3,215.72. About two months later, the MDOR filed an amendment changing its priority claim to $5,037.22 and its general unsecured claim to $778.25.

## DISCUSSION AND CONCLUSIONS

Distribution of the property of a bankruptcy estate is governed by 11 U.S.C.A. § 726. As pertinent here, it provides:

(a) ... [P]roperty of the estate shall be distributed--

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed before the date on which *the trustee commences distribution under this section;*

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is--

(A) timely filed under section 501(a) of this title;

. . .

(C) tardily filed under section 501(a) of this title, if--

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed *in time to permit payment of such claim.*

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title other than a claim of the kind specified in paragraph (2)(C) of this subsection.

---

1. The KDOR has explained that its proof of claim was meant to indicate that $1,552.23 of its claim would qualify for priority tax status if it were not a secured claim.

(Emphasis added.) The crux of the dispute in this case is the two italicized phrases. The Tax Claimants contend that a trustee does not "commence[] distribution" under § 726(a)(1) until the Court signs an order approving the final report or until the trustee actually writes and mails the distribution checks to the creditors. The trustee and Ms. Mitchell respond that tax claims filed when they were in this case must be disallowed under § 502(b)(9) as untimely filed, or at most, allowed only under § 726(a)(2)(C) if the creditor had no notice of the case but filed "in time to permit payment" of the claim. They argue that the trustee "commence[d] distribution" under § 726(a)(1) when he submitted his Report to the U.S. Trustee for approval, or alternatively, when the Report was filed with the court or when it was noticed to creditors.

■ A careful review of the facts reveals that the MDOR and the KDOR would not have been sent any of the notices in this case because they were not included on the mailing matrix that controls to whom official notices are directed. No evidence was presented to show that either of them had actual notice of the case in time to file timely proofs of claim. The trustee and Ms. Mitchell concede that the trustee still has not written or mailed checks distributing the estate to the creditors who filed timely proofs of claim. Consequently, both the MDOR and the KDOR filed their proofs "in time to permit payment" of their unsecured claims, which therefore qualify at least for distributions under § 726(a)(2)(C) on an equal basis with the timely-filed unsecured claims. The question remains whether the proofs were filed before the trustee "commence[d] distribution" under § 726(a)(1).

■ On the other hand, the IRS was included on the mailing matrix and so was sent all the official notices issued in the case, just not to the address specified in the Court's standing order. The IRS does not contend that the notices were not received in its St. Louis office, or that any of the information contained in the notices, such as the debtor's name or Social Security number, this Court's location, or the case number assigned to the debtor's case, was incorrect. Thus, although notice to the IRS may have been technically deficient, the IRS did receive actual notice in time to have filed a timely proof of claim. Since the IRS had actual, timely notice of the case, it does not qualify for any distribution under § 726(a)(2)(C). Nevertheless, like the MDOR and the KDOR, the IRS argues its proof of claim was filed before the trustee "commence[d] distribution" under § 726(a)(1).

■ The MDOR and the KDOR rely on what appears to be the only published decision that has addressed the meaning of "commences distribution" in § 726(a)(1). *See In re Wilson,* 190 B.R. 860, 861-62 (Bankr.E.D.Mo.1996). In *Wilson,* the court held that the phrase means the date on which the Court approves the trustee's final report. *Id.* at 862. Because the IRS filed its claim after the Court had already approved the trustee's Report, the IRS does not rely heavily on *Wilson.* However, the IRS does assert in a footnote in its brief that *Wilson* arguably supports its position because, in light of the motion to reconsider, the trustee's Report has not yet actually been approved in this case. The MDOR and the KDOR also point to phrases appearing in § 1101(2)(C) and § 1326(a)(1) that are similar to "commences distribution" and suggest they show the phrase refers to the time payment is actually made rather than the time the Court approved the trustee's Report. The IRS more strongly argues that the phrase "commences distribution" allows priority claims to be filed and be paid until

the trustee actually mails the distribution checks to the creditors whose claims have been allowed. The IRS suggests this meaning is required because not all final reports, when first filed, reflect the distribution that is ultimately made since objections can be made and sometimes will be sustained. Finally, the IRS contends proposed legislation currently pending before Congress that would amend § 726 supports its interpretation of the phrase.

For a variety of reasons, the Court concludes that the last date on which a priority claim can be filed before the trustee "commences distribution" under § 726(a)(1) is the date when the trustee's initial version of the final report is filed with the Court. By that time, all listed creditors have been given notice to file proofs of claim. The debtor has also had the opportunity to file any claims he or she may wish to, as authorized by Bankruptcy Rule 3004. The trustee has collected and liquidated the assets of the estate, reviewed the claims on file and obtained a determination of any objection he or she might have to any of them, and then submitted a proposed final report to the U.S. Trustee declaring that his or her administration of the estate is complete except for writing and mailing checks to pay the administrative fees and expenses and the allowed claims entitled to share in the available distribution. *See* 11 U.S.C.A. § 704(9); 28 U.S.C.A. § 586; Fed. R. Bankr. P. 3009 and 1993 Advisory Committee Note (requirement that court approve amounts and times of distributions in chapter 7 cases deleted, recognizing that U.S. Trustee supervises trustees); Fed. R. Bankr. P. 5009 and 1991 Advisory Committee Note (when trustee certifies estate fully administered, court may discharge trustee and close case without reviewing final report or trustee's certification). After the U.S. Trustee approves the trustee's final report, it is filed with the court and

then noticed to the debtor and the creditors on the mailing matrix. If priority tax creditors are not barred at that point, they could cause successive extensions for the benefit of other dilatory tax creditors by filing their claims one by one after each successive version of the trustee's final report has been filed, because if allowed under § 726(a)(1), those claims would reduce or even eliminate the distributions that the trustee had reported would be made to the general unsecured creditors, and so the final report would have to be noticed again and again. If the Court were to accept the Tax Claimants' arguments in this case, the MDOR and the KDOR (and for that matter, the debtor by objecting to the Report and seeking reconsideration of its approval) would have effectively obtained an extension of time for the IRS by filing their claims after the Report was filed. A chapter 7 trustee's first-listed duty is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest." 11 U.S.C.A. § 704(1); *see also Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),* 5 F.3d 750, 753-54 (4th Cir.1993) (expeditiously closing estate is trustee's main duty); *Estes & Hoyt v. Crake (In re Riverside-Linden Inv. Co.),* 925 F.2d 320, 322 (9th Cir.1991) (same); *Kowal v. Malkemus (In re Thompson),* 965 F.2d 1136, 1145 (1st Cir.1992) (important policy favors efficient bankruptcy administration); Fed. R. Bankr. P. 3009 ("dividends to creditors shall be paid as promptly as practicable"). Fixing the date the trustee "commence[d] distribution" as the date he first filed his Report helps the trustee fulfill this duty much more than the perhaps frequently delayed and extended time the Tax Claimants ask the Court to apply. As the Tax Claimants would have it, in a case like this

with three tax creditors, the trustee could prepare a final report, obtain the U.S. Trustee's approval, and file the report, then have to do the same things two more times when a new tardy tax claim is filed after each version of the final report has been filed and noticed to creditors.

The Court is not inclined to accept the date the trustee sent the Report to the U.S. Trustee or when the U.S. Trustee approved it because, unlike the date a pleading is filed with the Clerk of the Bankruptcy Court, neither of those dates is readily available to the public. When filed with the Clerk, the Report becomes a public record, marked with its filing date, and both the Report and the date may be found and reviewed either in person or electronically from a distance. This is not true of the U.S. Trustee's records. The Court does not believe it would be appropriate to interpret "commences distribution" to refer to any date not readily available from a public record.

It is true that phrases similar to "commences distribution" appear in at least two other provisions of the Bankruptcy Code, as pointed out by the MDOR and the KDOR. However, the different contexts in which the phrases appear indicate that they logically refer to something different than the phrase in § 726(a)(1). *See Conroy v. Aniskoff,* 507 U.S. 511, 515, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (statute must be read as a whole because the meaning of statutory language depends on context). Under the MDOR and the KDOR's argument, a chapter 7 trustee would not only commence but also complete distribution at the same time, because the trustee is finished distributing the estate once he or she, in accordance with the final report, writes and mails the checks to all the creditors. This is not true in the other cited contexts where similar phrases appear.

For purposes of a chapter 11 plan, "substantial consummation" means, among other things, "commencement of distribution under the plan." § 1101(2)(C). Unlike the distribution of a chapter 7 estate, however, distribution under a confirmed chapter 11 plan typically occurs over a period of time, not all at once, in some cases continuing for twenty or thirty years. In this context, it makes sense to use "commencement of distribution" to refer to the beginning of what may be many years of payments under the plan. Similarly, under § 1326(a)(1), a chapter 13 debtor is ordinarily supposed to "commence making the payments proposed by a plan within 30 days after the plan is filed," but will be making payments for anywhere from three to five years, *see* § 1322(d). As in chapter 11, it makes sense to refer to the time when the debtor actually makes the first payment in a chapter 13 case as the time payments "commence." In those contexts, commencement of distribution or payments truly is a beginning. However, since a chapter 7 trustee will ordinarily distribute the property of the estate all at once, it makes much less sense to refer to the time the property is actually distributed as the time the trustee "commences distribution." Instead, that is the time the trustee finishes distribution. Before the word was omitted from its latest revision, a leading legal dictionary's first definition for "commence" was: "To initiate by performing the first act or step. To begin, institute or start." *Black's Law Dictionary* 268 (6th ed. 1990); *cf. Black's Law Dictionary on Westlaw* (Bryan A. Garner, ed., 7th ed. 1999) ("commence" does not have a separate entry in this edition, but "initiate" is defined as, "To begin or start; commence"). In the chapter 7 context, the Court simply cannot agree that the completion of the distribution is the "first step" in the distribution.

The Tax Claimants' assertion that "commences distribution" means when the trustee sends all the distribution checks to the appropriate creditors also overlooks a phrase that Congress used in § 726(a)(2)(C)(ii). Where an unsecured creditor does not have notice or actual knowledge of the bankruptcy case in time to file a timely proof of claim, the claim is still to share equally with other allowed unsecured claims if the creditor files a proof of claim "in time to permit payment of such claim." Because such a creditor has not received the due process--that is, notice and an opportunity to be heard, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-20, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("due process" under Fourteenth Amendment); *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296-97, 73 S.Ct. 299, 97 L.Ed. 333 (1953) ("reasonable notice" under statute required reasonable opportunity to be heard that must precede judicial denial of party's claimed rights)--that would have enabled it to file a timely proof of claim, it seems logical to assume that Congress intended the phrase "in time to permit payment" to provide the most time possible for such a creditor to share in the estate, so that the injury caused by the lack of notice would be minimized as much as possible, short of requiring other creditors to return some of their share of the distribution so this creditor can be paid. Yet, the Tax Claimants' proposed construction of "commences distribution" would refer to exactly the same time. Surely using "commences distribution" to refer to the last possible time in the distribution process when money could be reallocated (without recovering any already distributed) would be an exceedingly strange use of the word "commences." This is especially true here because the phrase "in time to permit payment" was already in § 726(a)(2)(C)(ii) when Congress added the phrase "com-

mences distribution" to § 726(a)(1). *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, §726(a)(2)(C)(ii), *reprinted in* 1978 U.S.C.C.A.N. (92 Stat.) 2549, 2608 (enacting § 726(a)(2)(C)(ii) as it now exists); Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 213(b), 1994 U.S.C.C.A.N. (108 Stat.) 4106, 4126 (adding "commences distribution" to § 726(a)(1)). Since "in time to permit payment" clearly refers to the latest possible time when a claim could share in the distribution of a chapter 7 estate, the Court is convinced that Congress would have added that phrase to § 726(a)(1) if it wanted the same time to apply under that subsection. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (in construing statutes, courts generally presume Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another).

To the Court, it seems reasonable to conclude that the filing of the trustee's Report, already approved by the U.S. Trustee, formally initiates--in other words, "commences"--the distribution process that culminates in the mailing of checks to creditors. The Report is the official notice to all concerned that the trustee has finished the tasks of liquidating the estate and reviewing the claims, and has determined how the estate should be distributed. While interested parties have the opportunity to object to the Report, in the Court's experience, the most common types of objection, by far, are to: (1) the amount of fees and expenses that the trustee intends to pay as administrative expenses, and (2) the validity or amount of other claims that the trustee intends to pay. If sustained, these types of objections cause an increase in the amounts to be paid to the other administrative or general unsecured creditors, and require no fur-

ther notice to them since they are favorably, not adversely, affected. Under the Tax Claimants' theories, however, tax claims filed and allowed under § 726(a)(1) after the trustee filed his Report would require more noticing because, since they would be paid, the claims would reduce the amounts to be distributed to all other creditors (except sometimes other administrative creditors, when they are all being paid in full). The administrative inconvenience of this added noticing counsels against construing "commences distribution" to refer to such a late time in the distribution process.

Finally, the IRS suggests that proposed legislation pending before Congress would amend § 726(a)(1) to distinguish between the time a trustee files a final report and the time he or she commences distribution. The proposal would make § 726(a)(1) read:

> (a) ... [P]roperty of the estate shall be distributed--
>
> (1) first, in payments of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed *on or before the earlier of--*
>
>> *(A) the date that is 10 days after the mailing to creditors of the summary of the trustee's final report; or*
>> *(B) the date on which the trustee commences final distribution under this section;*

Bankruptcy Reform Act of 2001, S. 420, 107th Cong., § 713 (as engrossed in Senate); Bankruptcy Abuse Prevention and Consumer Protection Act of 2001, H.R. 333, 107th Cong., § 713 (as engrossed in Senate), *available at* http://thomas.loc.gov/home/c107query. html (August 9, 2001). The IRS cites no case law or other authority indicating the Court can properly rely on this proposed legislation to help it construe § 726(a)(1) as it exists today,

nor does the Court believe it would be appropriate to do so. In any event, while it is true that the proposed amendment distinguishes between the time a trustee files a final report and the time the trustee "commences final distribution," the proposal seems to indicate that the commencement of final distribution could, at least sometimes, occur *before* ten days after a summary of the trustee's final report is mailed to creditors. If it could not, then the deadline contained in subsection (A) would always be the earlier of the two dates, and subsection (B) would be superfluous. Furthermore, subsection (B) refers to the commencement of "final distribution," which could surely not occur before simple "distribution" has commenced. To the extent this proposed legislation provides any guidance here, then, it can only indicate that a trustee might sometimes "commence[] distribution" before ten days after his or her final report is filed and mailed to creditors. The proposal certainly does not support the IRS's construction of "commences distribution" as the time the trustee writes and mails the last distribution checks.

Applying the Court's construction to the events that occurred in this case leads to the following results. First, none of the Tax Claimants' claims are entitled to a distribution under § 726(a)(1) because they were all filed after the trustee had "commence[d] distribution" by filing his Report. Second, the MDOR's amended unsecured priority claim of $5,037.22 and its general unsecured claim of $778.25 are both entitled to share in the distribution, pursuant to § 726(a)(2)(C), meaning they will be paid pro rata with the other general unsecured claims. Third, the KDOR's unsecured priority claim of $21 and its general unsecured claim of $35 are also entitled to share in the distribution, pursuant to § 726(a)(2)(C), meaning they will also be

paid pro rata with the other general unsecured claims. The KDOR's secured claim, however, is not entitled to share in the distribution because it is not unsecured. The KDOR has had ample time to liquidate the property securing its claim and assert any remaining deficiency as an unsecured claim, but it has failed to do so. Given no basis for determining the value of the KDOR's security, the Court is forced, pursuant to § 502(c)(1), to estimate the KDOR's contingent unsecured deficiency claim to be $0. Finally, the Court concludes the IRS's priority and unsecured claims are entitled to no distribution from the estate because the IRS had timely notice of the filing of the debtor's bankruptcy case and of the need to file a proof of claim, so its claims do not qualify for treatment under § 726(a)(2)(C). Instead, the IRS's claims would fall under § 726(a)(3), and the estate does not have sufficient assets to distribute anything to claims in that class.

The trustee shall distribute the estate in accordance with this decision.

IT IS SO ORDERED.