Alfred R. **MENKARELL**, Appellant,

v.

**BUREAU OF NARCOTICS** et al.

No. 71–1597.

United States Court of Appeals, Third Circuit.

Argued May 2, 1972.

Decided June 20, 1972.

---

6. Mass.Gen.Laws ch. 277, § 19.

7. N.Y.Code of Criminal Procedure §§ 312, 313 and 317. (McKinney 1958).

Frederick C. Mezey, New Brunswick, N. J., Mezey & Mezey, New Brunswick,

N. J., for appellant; Elliot H. Gourvitz, New Brunswick, N. J., on the brief.

Roger S. Steffens, Asst. U. S. Atty., Trenton, N. J., Herbert J. Stern, U. S. Atty., Newark, N. J., for appellees.

Before VAN DUSEN, GIBBONS and ROSEN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal from an order granting the defendants' motion for summary judgment and dismissing the complaint. The plaintiff, Menkarell, the owner of a motor vehicle, seeks its return, or in the alternative its value. The car was seized by the individual defendants, agents of the Bureau of Narcotics. The complaint also names the United States as a defendant. The United States Attorney, appearing for all defendants, moved to dismiss on the ground that the car had been properly seized and forfeited to the United States pursuant to 49 U.S.C. § 782 et seq. (1970) because it had been used to transport contraband in violation of 49 U.S.C. § 781 (1970). The district court did not reach the propriety of the forfeiture, but dismissed the complaint for the reason that the action was barred by the two year statute of limitations in 28 U.S.C. § 2401(b) (1970). This ground for dismissal was not urged by the government. The defendants urge, however, that whether or not the action was time barred the summary judgment should be affirmed because the seizure and forfeiture were proper.

## THE APPLICABLE STATUTE OF LIMITATIONS

The district court held that the two year bar in 28 U.S.C. § 2401(b) governed. The plaintiff contends that the six year bar in 28 U.S.C. § 2401(a) is applicable. Section 2401(b) applies to tort claims against the United States. It is an amendment of the Federal Tort Claims Act, Act of Aug. 2, 1946, ch. 753, tit. IV, 60 Stat. 842, 28 U.S.C. § 2671 et seq. (1970), and it was designed to constitute a bar only to those actions as to which that statute first eliminated the bar of sovereign immunity. The House Report on the statute makes this quite clear:

"The Committee on the Judiciary to whom was referred the bill (H.R. 779) to *amend the Federal Tort Claims Act* to increase the time within which *claims under such act* may be presented to Federal agencies or prosecuted in the United States district courts, having considered the same, report favorably thereon without amendment and recommend that the bill do pass." (emphasis added) H.R.Rep.No.276, 81st Cong., 1st Sess. (March 21, 1949). 2 U.S.Code, Cong. & Admin. News, p. 1226 (1949).

If the complaint was one which, prior to the 1940 enactment of the Federal Tort Claims Act, was barred by sovereign immunity, the district court's decision would be correct. But before 1940, under the predecessor of 28 U.S.C. § 1346(a) (2) (1970) the United States has consented to suits for claims for recovery of taxes, fees and penalties alleged to have been wrongfully or excessively exacted under color of federal statutes. *See* Dooley v. United States, 182 U.S. 222, 21 S.Ct. 762, 45 L.Ed. 1074 (1901); Carriso v. United States, 106 F.2d 707 (9th Cir. 1939). The *Carriso* court expressly rejected the contention that a suit to recover excessive surveyor's fees exacted by a Collector of Customs was an action sounding in tort. It was instead "a claim founded upon a law of Congress within the meaning of § 24(20) of the Judicial Code [known as the Tucker Act, the predecessor of 28 U.S.C. § 1346(a) (2)]." 106 F.2d at 712.

The *Dooley* opinion, construing the Tucker Act, makes it clear that an action to recover an unlawful forfeiture under the customs law, though in some respects analogous to a tort action, nevertheless is a claim founded upon a law of Congress, namely a revenue act. *See also* United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 31–32, 35 S.Ct. 499, 59 L.Ed. 825 (1915).

The complaint in this case alleges an unconstitutional seizure and forfeiture of a vehicle which the government claims was used to transport a contraband narcotic drug possessed with intent to sell in violation of those provisions of the Internal Revenue Code proscribing such possession. 49 U.S.C. §§ 781–782. A suit to recover a vehicle so seized and so forfeited is founded upon a law of Congress to the same extent that a suit to recover duties wrongfully exacted is founded upon a law of Congress. Since the claim in this case is for less than $10,000 the district court had jurisdiction concurrent with that of the Court of Claims. 28 U.S.C. § 1346(a) (2). This being the case the six year statute of limitations in 28 U.S.C. § 2401(a) rather than the two year statute of limitations in 28 U.S.C. § 2401(b) is applicable. Jaekel v. United States, 304 F.Supp. 993 (S.D.N.Y.1969).

### THE FORFEITURE

The affidavits and answers to interrogatories establish that the motor vehicle owned by the plaintiff was seized on February 21, 1968 by two agents of the Bureau of Narcotics. An agent gave plaintiff a handwritten receipt saying:

"1967 Ford Mustang, New Jersey License MIN–643, was seized by me for violation of the Federal Narcotics Laws, 26 U.S.C. § 781–788. This vehicle was seized from Mr. Alfred Menkarell on February 21, 1968."

Alfred Menkarell is the plaintiff. The reference to 26 U.S.C. §§ 781–788 probably was intended to refer to 49 U.S.C. §§ 781–788. On March 5, 1968 the Acting District Supervisor of the Bureau of Narcotics wrote to Menkarell this ambiguous letter:

"Re: One Ford Hardtop Mustang
　Serial Number 7T01T255333

　The above-identified automobile registered in your name, was seized by Federal Narcotic Agents, February 21, 1968.

　The automobile in question was used for the transportation of a quantity of narcotics.

Enclosed is a copy of Regulations Number 6, Relating to the Seizure, Forfeiture and Disposition of Vehicles Used to Transport Narcotic Drugs, Etc., under the Act of August 9, 1939, as amended by the Act of August 9, 1950.

Very truly yours,"

The statutory reference, with a little research, can be identified as 49 U.S.C. § 781 et seq. The "Regulations Number 6" are not identified in the present record, but probably are copies of what now appear in 21 C.F.R. Part 316, Subpart E, § 316.71 et seq. and which formerly appeared at 21 C.F.R. Part 330, § 330.1 et seq.

On March 11, 18, and 25, 1968 the Bureau of Narcotics caused to be published in *The Trentonian,* a newspaper published in Trenton, New Jersey, a legal notice in typically small type as follows:

"TREASURY DEPARTMENT, Bureau of Narcotics, Philadelphia, Pennsylvania, March 11, 1968. NOTICE is hereby given that on February 21, 1968, one 1967 Ford Hardtop Mustang, Motor Number None, Serial Number 7T01T255333, with accessories was seized 1464 Nottingham Way, Trenton, New Jersey for violation of the Act of August 9, 1939, U.S.C. Supp. V. Title 49 sec. 781–83. Any person claiming an interest in said property must file with the District Supervisor, 605 Custom House, 2nd and Chestnut Streets, Philadelphia, Pennsylvania, a claim and cost bond in the sum of $250. with sureties to be approved by said District Supervisor on or before April 1, 1969, otherwise the property will be declared forfeited and will be disposed of accordingly to law. John W. Bitzer, Acting District Supervisor."

Although the Bureau of Narcotics knew that Menkarell was the registered owner of the car and had his address it did not mail him a copy of the notice. Although the Bureau had the motor vehicle registration number of the car it included only the serial number in the notice.

After receipt of the March 5, 1968 letter quoted above Menkarell wrote to the Bureau of Narcotics advising that he had no knowledge of his vehicle having being used for illegal purposes and requesting its return. As a result of this letter two Agents of the Bureau of Narcotics interviewed Menkarell on March 25, 1968. Although the notice of forfeiture quoted above had already been run in *The Trentonian* on March 11, March 18, and was running in *The Trentonian* on that very day, the Agents did not call it to Menkarell's attention.

On April 1, 1968 Henry L. Giordano, Commissioner of Narcotics, responded by letter to Menkarell's request for the return of his car as follows:

"The petition for remission or mitigation of forfeiture of the above-described automobile submitted by you is hereby denied. The petition is denied since you were aware that your son, the person who used the vehicle in violation of the law, had previously been arrested and convicted in violation of the law, had previously been arrested and convicted for violating the marihuana laws at the time you permitted him to use the vehicle. Therefore, you are not entitled to relief under the policy of the Treasury Department. This policy is fully explained in the attached copy of Section 15.1 of Title 31 of the Code of Federal Regulations. You are assured that the seizure and forfeiture of the vehicle, as well as the action taken on the petition, are in strict accord with the statutory and case authority and the policy of the Treasury Department.

Sincerely yours,"

Again no mention was made of the forfeiture notice.

On April 4, 1968 the Narcotic District Supervisor, *ex parte*, signed a Declaration of Forfeiture. This *declaration* refers to the published notices and recites:

"As no claim was filed for the property within 20 days from the date of the first publication of the advertisement, as required, it is hereby declared that such property has been forfeited to the United States."

The Declaration of Forfeiture does not mention Menkarell's letter.

Menkarell did not see the published notice or the Declaration of Forfeiture until after this suit was started. His son's uncontradicted affidavit states:

"The said vehicle has never been used in any activities involving narcotics or any other illegal activities whatsoever, to the best of my knowledge, either by me, members of my family or any other passengers, and I have never been accused of any crime involving the use of this vehicle."

The government contends that the steps outlined above, and the result, are in full conformity with the applicable statutes and regulations, and that the summary judgment should be affirmed.

A brief outline of the governing statutes and regulations is in order. It is unlawful, under 49 U.S.C. § 781(a), to transport or conceal certain contraband articles, including narcotics, in a motor vehicle, or to use any motor vehicle to facilitate the transportation, concealment, receipt, purchase or sale of narcotics. 49 U.S.C. § 782 provides that any motor vehicle used in violation of § 781 shall be seized and forfeited, and 49 U.S.C. § 782 imposes the duty on various federal officers to seize motor vehicles so used and to hold them for disposition pursuant to the provisions of the statute. 49 U.S.C. § 784 adopts by cross reference the provisions of the customs laws with respect to the method of converting a seizure into a forfeiture. These provisions are set forth at 19 U.S.C. § 1603 et seq. (1970).[1] 49 U.S.C. §

---

1. 19 U.S.C. § 1603 et seq. (1970) are slightly and, for purposes of this opinion, irrelevantly different from those predecessor provisions which were in force at the time of the transactions involved in this case. *See* 1 U.S.Code, Cong. & Admin.News, 322, 341 (1970); 2 U.S.Code Cong. & Admin.News, p. 3188 (1970). Those predecessor provisions are found in § 1603 et seq. of Title 19 of the 1964 Edition of the United States Code.

788 authorizes the Secretary of the Treasury to make rules and regulations with respect to seizures and forfeitures. Acting pursuant to § 788 the Secretary of the Treasury has established a policy with respect to remission and mitigation of forfeitures under 49 U.S.C. § 781 et seq., 31 C.F.R. § 15.1 (1969). The Bureau of Narcotics has adopted regulations covering both forfeiture proceedings and petitions for remission. These regulations now appear in Subpart E, Chapter 21, § 316.71 et seq. of the Code of Federal Regulations, having apparently been transferred from Part 330, Chapter II, Title 21 of the Code of Federal Regulations. *See* 36 Fed.Reg. 7820 (1971); 33 Fed.Reg. 16559 (1968).[2]

An experienced tracker through the wilderness of these confusing references and cross references will eventually determine that there are two ways in which a person whose vehicle has been seized may obtain relief.

One way is to petition for remission or mitigation. Remission or mitigation is authorized by 19 U.S.C. § 1618, which permits the Secretary of the Treasury to mitigate a forfeiture ". . . if he finds that such . . . forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation . . ." In reaching his decision the Secretary considers the petitioner's verified petition, and causes an investigation to be made. 21 C.F.R. § 316.81. There is no provision for disclosing to the petitioner the results of the investigation or for affording an opportunity to be heard. Thus the remission or mitigation route is for all practical purposes a matter of administrative grace.

The other route is in the forfeiture proceeding. The customs law provides for two types of forfeiture proceedings, depending upon the value of that which was seized. After seizure an appraisal is made. 19 U.S.C. § 1606. If the appraisal does not exceed $2500 the administrator may cause a notice of the seizure and the intention to forfeit and sell or otherwise dispose of the article to be published ". . . for at least three successive weeks in such manner as the Secretary of the Treasury may direct." 19 U.S.C. § 1607. Any person claiming an interest in the article seized must within twenty days of the date of the first publication of the notice of seizure file a claim stating his interest therein. If the claimant gives a bond to the United States for the amount of $250.00 for costs and expenses of a proceeding for condemnation, the custodian must transmit the claim and the bond to the United States Attorney in the district in which the seizure was made, who must then proceed to a condemnation of the merchandise in the manner prescribed by law. 19 U.S.C. § 1608. If no claim is filed or bond given within the twenty days specified the custodian may declare the article forfeited. 19 U.S.C. § 1609.

If the appraisal exceeds $2500 the custodian must transmit a report to the United States Attorney, with the names of available witnesses, for institution of condemnation proceedings. In this case the appraisal was for less than $2500, and the Bureau of Narcotics followed the summary forfeiture route.

Pursuant to 19 U.S.C. § 1607, the Secretary has specified the manner of publishing notice of seizure and proposed forfeiture.

"(a) If the appraised value does not exceed $2,500, the custodian shall cause a notice of the seizure and of the intention to forfeit and sell or otherwise dispose of the property to be published once a week for at least 3 successive weeks in a newspaper of general circulation in the judicial district in which the seizure occurred.

(b) The notice shall: (1) Describe the property seized and show the motor and serial numbers, if any; (2) state the time, cause, and place of sei-

---

2. Citations will be to the current edition of Chapter 21.

zure; and (3) state that any person desiring to claim the property may, within 20 days from the date of first publication of the notice, file with the custodian a claim to the property and a bond with satisfactory sureties in the sum of $250."

21 C.F.R. § 316.75.

The notice published in the *Trentonian* on March 11, 18 and 25 comported with this regulation. Several features of the prescribed notice are significant. The motor vehicle must be described by motor or serial number, and not by registration number, even though it would seem that the latter number would be more likely to be known to the owner. The time and place of seizure must be specified, but significantly, there is no requirement that the name or the address of the owner be specified, even though in the case of automobiles such information is readily available from the motor vehicle registry office of the state where the car is registered. The newspaper notice is the only form of notice prescribed, even in cases where the name and address of the owner . are known, and the custodian is free to place the advertisement in any newspaper of general circulation in the judicial district in which the seizure occurred. In New Jersey, for example, the custodian could advertise in the *Bergen Evening Record,* published in Hackensack the seizure and proposed forfeiture of a car seized in Cape May. It is quite evident that the summary forfeiture procedure has not been designed to maximize the opportunities for notice and opportunity to be heard.

■ The agency practice disclosed in this record, as well, is indicative of an attitude of concealment rather than enlightenment. The first communication from the Bureau of Narcotics, its letter of March 5, 1968 informing Menkarell of the seizure, does not inform him that there has been an appraisal, that the appraisal is under $2500.00 and that therefore the summary forfeiture procedure will be applicable. It does not inform him that at some future time, in the discretion of the agency, he may be advised by an advertisement in some New Jersey newspaper that the summary forfeiture proceeding will be triggered. Menkarell might have deduced as much if, as we presume, the "Regulations Number 6" which was enclosed in the letter was a copy of the then governing regulations published in the Code of Federal Regulations, and if he was astute enough to understand their significance.

Menkarell's letter to the Bureau of Narcotics is not before us, but from what is before us there is nothing to indicate that he intended it to be a petition for remission or mitigation rather than a claim of property. Yet, the Bureau waited until twenty days had passed from the initial publication of its notice, and then on April 4, 1968 construed the letter as a petition for remission rather than as a claim. By then, of course, the time period for filing a bond for costs had elapsed and the forfeiture became automatic. 19 U.S.C. § 1609.

The interview by the Narcotic Agents on March 25, 1968 is also inconsistent with a policy of enlightenment, for although on that date a bond for costs would still have been timely, the agents did not inform Menkarell of the appraisal, the notice, or the certainty of summary forfeiture if no bond was filed.

■■ This kind of summary forfeiture proceeding is entirely too summary. Due process may not demand actual notice in every case, but it forbids the use of a method of notice which is not reasonably calculated to reach those who could easily be informed by other means readily at hand. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), sets forth the appropriate standard. It recognizes that notice by publication may be appropriate where there are interested persons whose addresses are unknown. But where a trustee attempted to rely on a published notice, authorized by a New York statute, to bar rights of interested persons whose whereabouts were known, the procedure violated due process. Such is the case here. Menkarell's name and address were known. He should at the least have been given a

copy of the notice of proposed forfeiture. Indeed in every case of the seizure of a registered motor vehicle the name and address of the registered owner is readily available from the motor vehicle registration authorities. In these circumstances no reasons of necessity compel the resort to notice by publication in lieu of notice more likely to be effective. *See* Schroeder v. City of New York, 371 U.S. 208, 213, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); Walker v. City of Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *cf*. McClendon v. Rosetti, 460 F.2d 111 (2d Cir. 1972).

Thus on the record before us we must reject the government's alternative ground for affirmance since it would appear that Menkarell's car was forfeited to the United States by proceedings which did not comport with due process.

The judgment will be reversed and the case remanded for further proceedings consistent with this opinion.