**Antoine NOEL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 308–87C.**

United States Claims Court.

Jan. 5, 1989.

Andrew L. Waks, Miami, Fla., for plaintiff.

Jeanne A. Anderson, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

RADER, Judge.

The plaintiff in this action, Antoine Noel, seeks the return of $22,355 in currency seized by the Drug Enforcement Agency (DEA) allegedly in violation of his constitutional rights under the fourth and fifth amendments. The case is currently before this court, after argument, on the defendant's motion to dismiss the complaint for lack of subject matter jurisdiction and the plaintiff's motion to strike an affidavit submitted by the Government. For reasons set forth herein, this court determines that it is without jurisdiction in this case.

## FACTS

On January 6, 1986, Mr. Noel was travelling through the Atlanta Airport en route from Miami, Florida, to Dayton, Ohio.[1] He was detained by DEA agents, working in conjunction with the United States Customs Service. These agents searched his luggage and found a large amount of currency.[2] After questioning Mr. Noel about

---

1. The defendant contends that Mr. Noel was bound to Miami from Dayton. For purposes of considering this motion to dismiss, however, the court accepts the facts as stated by the plaintiff.

2. The plaintiff's complaint seeks relief in the amount of $22,350.00. The pleadings contain a copy of a receipt for $22,430 given to the plaintiff shortly after the currency was seized. In ¶ 6

the source of the money, the agents gave him a receipt for the cash and released him to complete his trip. Shortly thereafter, a dog trained to detect controlled substances reacted positively to the currency.

The money was forfeited on March 27, 1986, under administrative procedures pursuant to 21 U.S.C. § 881 (Supp. III 1985). On July 7, 1986, Mr. Noel petitioned the DEA for restoration of the funds. The DEA rejected the petition on July 21, 1986, for failure to state a credible claim to the money.

The plaintiff did not seek reconsideration of this denial, but instead filed a complaint in the United States District Court for the Southern District of Florida. *Noel v. United States Customs Service*, No. 86–6646 (S.D.Fla. filed Aug. 14, 1986). In the district court complaint, which is substantially identical to the complaint in this case, the plaintiff sought return of funds seized in violation of his constitutional rights. On the Government's motion, the district court on 11 September 1987 dismissed Mr. Noel's suit with prejudice for failure to prosecute. On the motion of the plaintiff, the district court's action was modified to a dismissal without prejudice on September 29, 1987.

Despite attempts by plaintiff to obtain return of his money, the Government has retained the currency forfeited pursuant to 19 U.S.C. §§ 1607–1618 (Supp. III 1985), 21 C.F.R. 1316.71–1316.8 (1987), and 28 C.F.R. 9.1–9.7 (1988). Mr. Noel has not been charged with any criminal violation in connection with the seizure. Because the money was allegedly seized without probable cause, plaintiff contends that the forfeited funds were acquired in violation of due process of law protected by the fifth amendment to the Constitution. Further, the plaintiff contends that the funds were acquired in a manner that constitutes a taking under the just compensation clause of the fifth amendment to the Constitution.

## DISCUSSION

### I.

The Government has moved to dismiss this action pursuant to RUSCC 12(b)(1) and (4) for lack of jurisdiction and for failure to state a claim upon which relief can be granted. In evaluating a RUSCC 12(b)(1) motion to dismiss, the general rule is that the court need not limit its inquiry to the factual allegations in the complaint, but may review relevant evidence to determine factual disputes concerning the court's jurisdiction. *See, e.g., Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). When examining a RUSCC 12(b)(4) motion to dismiss, however, the court is generally obligated to accept as accurate the factual allegations (but not legal conclusions) in the complaint and to resolve all reasonable inferences in favor of the nonmoving party. 2A J. Moore, J. Lucas & G. Grother, Jr., *Moore's Federal Practice* ¶ 12.07 [2.–5] at 12–63 (2d ed. 1987).

Both of the pending RUSCC 12(b) motions require the court to assess the merits of the plaintiff's complaint. The complaint asserts jurisdiction in the United States Claims Court under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), which states:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

In an attempt to meet the terms of the Tucker Act, Mr. Noel bases his complaint on the Constitution, specifically an unlawful fourth amendment seizure and two fifth amendment infractions (a denial of due process and a taking without just compensation).

■ The Tucker Act, standing alone, does not create any substantive right to recover money damages from the United States. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Rather, the Tucker Act is a juris-

---

of his amended complaint, the plaintiff alleges that the DEA seized $22,355 in cash. For purposes of this motion, the court will use plaintiff's figure of $22,355.00.

dictional statute providing a judicial damages remedy against the United States for the violation of substantive rights in the Constitution, in Acts of Congress, in regulations of executive departments, or in express or implied contracts. *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

■ Not every claim arising under federal constitutional, statutory, or regulatory law, however, satisfies the jurisdictional demands of the Tucker Act. *Mitchell,* 463 U.S. at 216, 103 S.Ct. at 2967. Rather, the claim must arise under a provision of the Constitution, federal law, or federal regulation which mandates the payment of money damages to compensate for violations by the Federal Government. *Id.* at 218, 103 S.Ct. at 2968; *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–07, 372 F.2d 1002, 1007–09 (1967). Thus, in order to invoke the jurisdiction of the Claims Court, a plaintiff must state a claim based on one of the specific constitutional provisions, federal laws, or federal regulations that mandate payment of money damages. *Testan,* 424 U.S. at 400, 96 S.Ct. at 954; *Eastport Steamship Corp.,* 372 F.2d at 1009.

■ The fourth amendment to the Constitution, upon which the plaintiff bases part of his claim, protects individual rights to security and privacy against unreasonable searches and seizures. Moreover this amendment, which grew directly out of the experience of the colonials under the heavy hand of King George III, *see, e.g.,* 1 B. Schwartz, *The Bill of Rights: A Documentary History* 199, 205–06 (1971), requires search warrants to be supported by probable cause. The fourth amendment, however, does not mandate the payment of money damages by the United States. *Shaw v. United States,* 8 Cl.Ct. 796, 800 (1985); *Prevado Village Partnership v. United States,* 3 Cl.Ct. 219, 228 (1983); *Royce v. United States,* 1 Cl.Ct. 225, 226

(1982). Accordingly, the Claims Court lacks jurisdiction to grant relief to claims based solely on the fourth amendment's search and seizure provisions.

■ The due process clause of the fifth amendment to the Constitution, upon which the plaintiff bases another part of his complaint, guarantees to individuals a basic standard of fairness in dealings with the Federal Government. *In re Winship,* 397 U.S. 358, 359, 90 S.Ct. 1068, 1070, 25 L.Ed. 2d 368 (1970); *In re Gault,* 387 U.S. 1, 30, 87 S.Ct. 1428, 1445, 18 L.Ed.2d 527 (1967). The due process clause, however, also does not create a cause of action for money damages against the United States. *Carruth v. United States,* 224 Ct.Cl. 422, 445, 627 F.2d 1068, 1081 (1980); *Schmidt v. United States,* 3 Cl.Ct. 190, 194 (1983); *Prevado,* 3 Cl.Ct. at 228. Accordingly, this court lacks jurisdiction to grant relief to claims based on the constitutional guarantee of due process. *Montego Bay Imports, Ltd. v. United States,* 10 Cl.Ct. 806, 809 (1986); *Cabrera v. United States,* 10 Cl.Ct. 219, 221–22 (1986).

■ The plaintiff further attempts to establish jurisdiction in the Claims Court by alleging a taking of private property for public use without just compensation in violation of the fifth amendment to the Constitution. The fifth amendment takings clause mandates compensation when the Federal Government appropriates private property which it is unwilling to purchase. *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960); *Pennsylvania Coal v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922); *Florida Rock Indus., Inc. v. United States,* 791 F.2d 893, 898–99 (Fed.Cir.1986). Moreover, in a case with strikingly similar facts, this court stated that "[t]he Claims Court would have jurisdiction over the issues at bar if plaintiff had grounded its claim upon ... a fifth amendment taking without just compensation." *LaChance v. United States,* 15 Cl.Ct. 127, 130 (1988).[3] While the plaintiff

---

**3.** In *LaChance,* the DEA, while conducting surveillance at an airport, detained a traveller and seized a bag containing $49,000 in currency. A

satisfies the threshold requirements of the Tucker Act by alleging a fifth amendment taking, a more thorough analysis is necessary to ascertain whether the facts of this case comprise an actual taking cognizable within the jurisdiction of this court.

The Claims Court in *LaChance* did not, in fact, assert jurisdiction to question the propriety of a forfeiture based on a fifth amendment taking, but instead clarified that "[o]n facts such as these, where the seizure and forfeiture of plaintiff's money are within the normal regulatory processes there is no taking for which fifth amendment just compensation is due." 15 Cl.Ct. at 130 (citations omitted). Thus, the *La-Chance* case illustrates a distinction between proper regulation under police powers and takings under eminent domain powers. The former prevents the use of private property in ways detrimental to public health or safety, while the latter takes private property for a public use without just compensation. *See, e.g., Rail Reorganization Act Cases,* 419 U.S. 102, 125–56, 95 S.Ct. 335, 349–50, 42 L.Ed.2d 320 (1974). Although the Supreme Court has articulated that "if regulation goes too far it will be recognized as a taking," *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922), the Claims Court has repeatedly recognized the regulatory character of drug-related forfeitures. *Golder v. United States,* 15 Cl.Ct. 513, 518 (1988); *Torres v. United States,* 15 Cl.Ct. 212, 215–16 (1988); *LaChance,* 15 Cl.Ct. at 130.

Moreover, the plaintiff in this case maintains that the alleged taking was the result of unlawful federal activity. A fifth amendment taking is characterized by the Government's use of *lawful* property, contract, or regulatory power to convert private property to public uses. *Florida Rock Indus.,* 791 F.2d at 898–99; *Armijo v. United States,* 229 Ct.Cl. 34, 37, 663 F.2d 90, 93 (1981). In other words, "[a] taking within the meaning of the [fifth] amendment must [be] an intentional appropriation of the property to public use, and the appropriation must [be] authorized by law."

*Vansant v. United States,* 75 Ct.Cl. 562, 566 (1932). Challenges to the propriety or lawfulness of Government actions sound in tort. *Montego Bay,* 10 Cl.Ct. at 809; *Shanbaum v. United States,* 1 Cl.Ct. 177 (1982). Consequently, the remedy for Government wrongdoing in the exercise of its regulatory powers is a tort action, over which this court has no jurisdiction. *Eastport Steamship Corp.,* 372 F.2d at 1010; *Shaw,* 8 Cl.Ct. at 799. Because it involves regulatory police powers and sounds in tort, this purported taking claim is not an actual taking claim within the jurisdiction of this court.

## II.

Finally, the plaintiff challenges the validity of this administrative forfeiture by contending that 19 U.S.C. § 1607 only applies in cases where the property in question is valued at $10,000 or less. To the contrary, § 1607, as amended in 1984, plainly governs claims for property valued at $100,000 or less. Pub.L. No. 98–573, § 311, 98 Stat. 1837, 2053–54 (1984).

The forfeiture process begins with notice of the Government's intent to forfeit the property pursuant to 19 U.S.C. § 1607 and 21 C.F.R. § 1316.75. This process requires the Government to publish notice of the seizure and intent to forfeit in a publication once a week for at least three successive weeks. Upon receiving notice, claimants may choose one of two courses of action to obtain relief. One alternative is for claimants to seek their day in court by filing a cost bond of ten percent of the appraised value of the property. The filing of a cost bond terminates the administrative proceedings and sets in motion judicial proceedings in the district where seizure occurred. 19 U.S.C. § 1608. Upon posting of the cost bond, the United States Attorney institutes proceedings to condemn the property.

A second alternative available to claimants is to allow the administrative proceedings to continue and file a petition for relief with the administrator of the DEA. As

narcotics sensitive dog later reacted positively to    the bag of money.

discussed above, this second alternative may only be used when the property is valued at $100,000 or less. 19 U.S.C. § 1607(a)(1), 21 C.F.R. § 1316.79, 28 C.F.R. § 9.4(a). The election to demand judicial proceedings or to rely upon administrative proceedings rests solely with the claimant. The authority to grant administrative relief from a drug-related forfeiture is apparently vested exclusively in the Secretary of the Treasury, 19 U.S.C. § 1618, and in the Attorney General, 21 U.S.C. § 881(d). *See also United States v. L'Hoste,* 609 F.2d 796, 812 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980).[4]

Federal courts have only limited authority to review the decision of the Attorney General or the Secretary of the Treasury upon a petition for remission or mitigation. An election to challenge a forfeiture by a petition for remission, rather than by posting a bond prior to judicial challenge, binds the plaintiff exclusively to the available administrative remedies. *United States v. One 1961 Cadillac,* 337 F.2d 730 (6th Cir.1964); *LaChance v. DEA,* 672 F.Supp. 76, 80 (E.D.N.Y.1987). Judicial remedies are often foreclosed by the administrative remedy option. Remission and mitigation thus become matters of "executive grace." 21 U.S.C. § 881(d); 19 U.S.C. § 1618; *Dorsheimer v. United States,* 74 U.S. (7 Wall) 166, 19 L.Ed. 187 (1868); *United States v. One Hughes Helicopter,* 595 F.Supp. 131 (N.D.Tex.1984).

The plaintiff invokes the case of *Menkarell v. Bureau of Narcotics,* 463 F.2d 88 (3d Cir.1972), for the proposition that the

Tucker Act creates jurisdiction "for the return of property which had been seized or forfeited by the Government." Plaintiff's Brief filed March 22, 1988, at 1. *Menkarell* applied constitutional due process safeguards to a summary forfeiture proceeding which was determined to have granted the plaintiff insufficient notice of the adverse action. Mr. Noel does not contest the fairness of the forfeiture proceedings, but the fairness of the underlying seizure.[5] As discussed earlier, a challenge to the underlying legality of Government conduct in this instance does not fall within the purview of Claims Court jurisdiction.

Moreover, *Menkarell* was issued many years before the Supreme Court clarified that the Tucker Act "does not provide any substantive rights enforceable against the United States for money damages." *Mitchell,* 463 U.S. at 216, 103 S.Ct. at 2967. Apparently recognizing that *Mitchell* forecloses any independent Tucker Act jurisdiction for the recovery of damages, the plaintiff now asserts that his action seeks the "return of property," rather than money damages.[6] More than artful pleading is necessary, however, to establish Tucker Act jurisdiction.

The Tucker Act only provides jurisdiction in the Claims Court when the claimant asserts a substantive right found in some other source of law, which source of law " 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " *Mitchell,* 463 U.S. at 216–17, 103 S.Ct. at 2967–68 (quoting *Testan,* 424 U.S. at 398–400, 96 S.Ct. at

4. In *L'Hoste,* the Fifth Circuit maintained that "Congress plainly addressed the possible hardship that forfeiture could cause to those innocent parties holding an interest in forfeited property and gave responsibility to the United States, not the district court, to alleviate hardship." 609 F.2d at 812.

5. *Menkarell* clearly distinguishes between the administrative forfeiture process ("the remission or mitigation route is for all practical purposes a matter of administrative grace") and the summary forfeiture process, which the Third Circuit determined to give insufficient notice. The Government contends that Mr. Noel *sought relief by the administrative route,* which foreclosed judicial review. This court,

however, need not determine whether plaintiff made an election to seek relief by the administrative route. Because jurisdiction under the Tucker Act is not present in this court for the reasons specified, this court need not presume to rule on the procedural sufficiencies of the forfeiture process in this case nor the significance of the plaintiff's actions with respect to electing administrative or judicial remedies.

6. In his original and amended complaints, the plaintiff clearly alleges to have suffered "damages in the amount of $22,350." Comp. and Am.Comp. at ¶ 14. In his brief, however, the plaintiff contends that "he is not seeking money damages per se ... [rather] the return of his property." Pl.Br. filed March 22, 1988, at 2–3.

953–54 and *Eastport Steamship Corp.*, 372 F.2d at 1009). Other than the fifth amendment takings clause which he also fails to satisfy, the plaintiff fails to invoke any "source of law" independent of the Tucker Act sufficient to establish jurisdiction. In another recent forfeiture case, the Federal Circuit reiterated the importance of these jurisdictional requirements. *See United States v. One (1) 1979 Cadillac Coupe DeVille*, 833 F.2d 994, 999 (Fed.Cir.1987). Thus, whether plaintiff's claim is characterized as seeking money damages or a return of property is irrelevant in the absence of the requisite jurisdiction under the Tucker Act.

The Claims Court has no authority to review the forfeiture presented by the facts of this case. If any federal court has jurisdiction in this case, it is most likely the United States district court governing the territory in which the $22,355 was seized. *See United States v. Larkin*, 208 U.S. 333, 28 S.Ct. 417, 52 L.Ed. 517 (1908); *Westfall Oldsmobile v. United States*, 243 F.2d 409 (5th Cir.1957). In the United States District Court for the Southern District of Florida, Mr. Noel's claim has been dismissed without prejudice.

### CONCLUSION

The issues that arise from drug-related forfeitures are not new to the Claims Court. A recent case succinctly and accurately summarized the plaintiff's dilemma:

> If the government's seizure of the currency was proper, the currency was forfeited pursuant to the applicable statutes and regulations. If the government's seizure of the currency was improper, under the United States Constitution or the applicable statutes and regulations, the plaintiffs do not state a claim within the jurisdiction of this court.

*Torres*, 15 Cl.Ct. at 217–18.

The *Torres* case, like *LaChance*, has strikingly similar operative facts to the case at bar. Each case arose after the DEA had seized currency in connection with a drug investigation. In each case, the plaintiff sought return of the currency in the Claims Court. Upon review, however, these cases fall outside the jurisdiction granted to the Claims Court by Congress.

Defendant's motion to dismiss for lack of subject matter jurisdiction is granted. The Clerk of the court is directed to dismiss plaintiff's complaint. No costs.