## In the Matter of HALLMARK BUILDERS, INC., Debtor.

### John and Mary HURSEY, Plaintiffs,

v.

### HALLMARK BUILDERS, INC., Defendant.

**Bankruptcy No. 84–551.
Adv. No. 84–173.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 27, 1985.

Ronald W. Sikes, Titusville, Fla., for debtor, defendant.

T. Kevin Knight, Orlando, Fla., for plaintiffs.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER before the Court in this Chapter 11 case is a construction contract

dispute. The adversary proceeding was initiated by a complaint filed by John and Mary Hursey, seeking declaratory relief as to the disposition of certain real property and damages for defective construction against the Debtor, Hallmark Builders, Inc. (hereinafter referred to as "Hallmark").

The Hurseys contend that they were entitled to refuse to close on the purchase of the house, based on their claim that the house was uninhabitable and that they are entitled to have their property reconveyed to them upon their payment of the purchase price reduced by the $22,751.00 it will require to correct the defects in construction.

Hallmark filed a counterclaim against the Hurseys, seeking damages suffered as a result of the Hurseys' failure to close on the house when tendered. Hallmark also sought injunctive relief prohibiting the Hurseys to interfere with the completion of the construction.

It appears that Hallmark is willing to reconvey the property free and clear of liens, including free of the construction mortgage, but contends that the Hurseys breached the agreement in refusing to close in July of 1984, and that as a result, the Hurseys should be assessed damages to the extent of the additional interest accrued on the construction loan from June of 1984 to date.

The facts germain to the disposition of the issues raised by the complaint and the counterclaim as developed at the final evidentiary hearing are as follows:

On June 14, 1983, the Hurseys and Hallmark entered into a written agreement entitled "Agreement and Contract to Purchase Real Estate" (Agreement). Under the terms of the Agreement, Hallmark was to construct a single family dwelling substantially in accordance with plans and specifications incorporated into the contract by reference. The Hurseys agreed to purchase the house upon completion for $62,880.00, of which $13,500.00 has been paid. Pursuant to the terms of the Agreement, the Hurseys conveyed certain real property to Hallmark "for construction purposes only" in order to enable Hallmark to obtain a construction loan. Hallmark built the house contracted for, albeit with delays and allegedly with a number of defects yet to be corrected.

The property has not been reconveyed as yet, but the sale transaction can be completed upon this Court's determination of the rights and liabilities of the parties regarding the delays and defective workmanship.

There is no dispute that completion of the house was untimely according to the Agreement. The evidence, however, clearly supports a finding that the delay in completion was caused by the Hurseys. Mr. Hursey, in direct contravention of ¶ 9 of the Agreement, came onto the job site repeatedly and interfered with the work in progress to the extent, in at least one occasion, that one of the subcontractors left the job site, thereby delaying completion of the construction.

After completion of the house to its present state, the Hurseys further delayed closing by citing numerous defects in the construction and workmanship. The evidence reveals that the defects, although numerous and unsightly, are basically only cosmetic and do not render the house uninhabitable, as claimed by the Hurseys.

In addition, ¶ 8 of the contract provides that "completion for the purpose of delivery of the deed and payment of the purchase price [is] when the F.H.A. or V.A. or conventional mortgage shall issue its final approved compliance report, ...".

When Hallmark obtained a certificate of occupancy and F.H.A. approval of the home in December of 1984, the house was basically the same condition as when it was first tendered to the Hurseys in July, with some minor exceptions, and it is clear that F.H.A. approval could have been obtained in July but was not pursued because the Hurseys refused to close. Based on this, this Court is satisfied that Hallmark met the substantial performance standard required for closing as agreed by the parties.

As noted earlier, Hallmark obtained the construction loan from Duval Federal Sav-

ings and Loan of Jacksonville in the principal sum of $49,000.00. This loan is secured by a mortgage on the subject real property. Under the terms of the Agreement, Hallmark is required to repay principal and interest on the loan, satisfying the mortgage prior to closing. As a result of the Hurseys' refusal to close when the house was tendered, Hallmark has incurred the liability for additional interest on the construction loan from July 1, 1984 to date.

There is no question that the workmanship, while not rendering the house uninhabitable, has left something to be desired and is defective and there is evidence of numerous defects of varying severity that will cost $22,751.00 to correct.

Under Florida's doctrine of substantial performance, a contractor may recover the contract price upon substantial performance, *Grossman Holdings, Ltd. v. Hourihan*, 414 So.2d 1037 (Fla.1982); *Boyce Construction Corp. v. Dist. Bd. of Trustees of Valencia Community College*, 414 So.2d 634 (Fla. 5th DCA 1982); *Ocean Ridge Development Corp. v. Quality Plastering, Inc.*, 247 So.2d 72 (Fla. 4th DCA 1971).

The Court is satisfied Hallmark's obligations under the Agreement had been substantially performed as of July of 1984 and that the Hurseys' refusal to close at that time was unreasonable and constituted a breach. Therefore, Hallmark is entitled to recover the contract price plus the additional interest payable on the construction loan as a result of the Hurseys' refusal to complete the transaction in July 1984. *See Natural Kitchens, Inc. v. American Transworld Corp.*, 449 So.2d 855 (Fla. 2d DCA 1984); *Hobbley v. Sears, Roebuck and Co.*, 450 So.2d 332 (Fla. 1st DCA 1984) (holding that damages naturally, proximately, and foreseeably resulting from breach are recoverable).

By the same token, it is equally clear that under the doctrine of substantial performance, the second party to a construction contract may recover damages for the defects in construction. See *Grossman Holdings, Ltd.*, supra; *Ocean Ridge Development Corp.*, supra.

The measure of damages for defective construction work was established by the Supreme Court as "the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste....", *Grossman*, supra at 1039. Defects complained of in this proceeding are ones which can be corrected without unreasonable waste. The reasonable cost of corrective work in this instance is claimed to be, by the Hurseys, $22,751.00. While this estimate is somewhat on the high side, there is no other evidence in this record which would enable this Court to make any other assessment of the cost of corrective work.

In summary, Hallmark is entitled to recover the balance of the purchase price, $49,380, reduced by $22,751 to cover the cost of correcting defects, for a total of $26,629. In addition, Hallmark is entitled to recover the interest accrued on the construction loan from June of 1984 to date. Hallmark should be compelled to satisfy all liens, including but not limited to the aforementioned construction mortgage and any mechanics liens and, upon payment by the Hurseys, convey title to the subject property free and clear of all liens.

A separate final judgment will be entered in accordance with the foregoing.