In re LEN KELLEY ENTERPRISES, INC., Debtor.

**Bankruptcy No. 88–1212–BKC–3P1.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Feb. 4, 1991.

Richard A. Perry, Ocala, Fla., for claimants.

Leon M. Boyajan, II, Inverness, Fla., for debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

### (DEBTOR'S OBJECTION TO CLAIM NUMBER 61)

GEORGE L. PROCTOR, Bankruptcy Judge.

Upon debtor's objection to Claim Number 61 filed by John A. Marqua and Mary Jane Marqua (claimants) in the amount of $43,-038.63, the Court enters the following Findings of Fact and Conclusions of Law:

*Findings of Fact*

1. The grounds for objection are (1) the debt is not owed and (2) the claim was untimely filed. The claimants suggest that

the failure to file within the bar date limitations was due to the lack of notice.

2. The issues to be determined are (1) the amount of damages, if any; (2) justification shown by the claimants under Bankruptcy Rule 3003(c)(3) for an extension of time to file a proof of claim.

3. Claimants on October 1, 1987, contracted with the debtor to build a home according to drawings and specifications. The contract price was $112,000. Paragraph 8 reads as follows:

"No changes or additions to the plans and specifications, unless set forth in this agreement, are included in the price hereinabove, and no extra work or changes shall be made unless pursuant to a written order signed by the Buyer and accepted by the Seller."

4. The debtor was paid $22,400 upon execution of the contract and construction began. During the period from November, 1987, through July, 1988, materials and labor were furnished. However, the debtor seldom paid subcontractors, materialmen, or laborers and used the downpayment for purposes other than the construction of the home.

5. The debtor and the claimants entered into an agreement on July 23, 1988, modifying the original contract to provide for a joint checking arrangement to pay for further materials and labor. The parties further acknowledged the filing of this Chapter 11 case. Paragraph 3 of the Modification Agreement is as follows:

"Both parties hereto agree that, prior to the issuance of the above referenced joint check, the debtor shall provide Marqua with invoices evidencing the exact amount of payment to be presented jointly to the debtor and the other person or entity entitled to the payment. Said joint check arrangements to insure Marqua that all materialmen, suppliers, laborers, sub-contractors, sub-contractors, (sic) or any other persons who have provided any services whatsoever and thus afforded any right to file a lien against the subject property shall be paid in full."

6. The debtor then proceeded to construct the home pursuant to the contract and Modification Agreement. During the course of construction two change orders were submitted to claimants. Change Order No. 1 was signed by claimants on December 14, 1987, authorizing the debtor to charge an additional $150.00 for smoothing walls and an additional $292.00 for changing the fireplace. The change order also authorized the deductions of $2,100.00 for credit of cabinet costs and $80.00 for balance of credit on prints from the contract price.

7. Claimants authorized a second change order on June 26, 1988, and it added $1,831.55 to the contract price for pouring concrete under the wood floor.

The contract price after accounting for the two change orders is as follows:

| | | |
|---|---|---|
| Original Contract Price | | $112,000.00 |
| Total Credits Change Order 1 | − | 2,180.00 |
| Total Additions Change Order 1 | + | 342.00 |
| Total Additions Change Order 2 | + | 1,831.55 |
| Total Contract Price w/Change Orders | | $111,993.55 |

8. Construction on the home ceased in early 1989. The home was substantially complete, however, various contract items needed to be finished. By letter dated August 15, 1989, the debtor credited claimants $5,000.00 for window credit (less expensive windows were used), $150.00 for Landscape Allowance and $980.00 for Sod Allowance (claimants paid for landscaping and laying of sod). Accordingly, $6,130.00 was to be deducted from the contract price.

9. The total contract price for the home, as substantially completed, is as follows:

| | | |
|---|---|---|
| Total Contract Price w/change order | | $111,993.55 |
| Less Pool Credit | − | 15,000.00 |
| Less August 15, 1989, credit | − | 6,130.00 |
| Total Contract Price as Built | | $ 90,863.55 |

10. The debtor provided invoices showing the total amount of payments made under the Modification Agreement and after the debtor filed for protection under Chapter 11 of the Bankruptcy Code. Since July 23, 1988, $97,058.06 in bills were paid by claimants. Accordingly, the total amount paid by claimants is as follows:

| | |
|---|---|
| Initial Deposit | $ 22,400.00 |
| Total Bills Paid | 97,058.06 |
| Total Paid by Claimants | $119,458.06 |

**354**

11. The total cost of the home to claimants is greater than the total adjusted contract price as built, resulting in a substantial overpayment:

| | |
|---|---:|
| Total Paid by Claimants | $119,458.06 |
| Total Contract Price as Built | 90,863.55 |
| | |
| Overpayment | $ 28,594.51 |

12. The home as substantially completed differs from the home proposed to be constructed under the contract. There are a number of items that were to be completed or incorporated into the construction that the debtor failed to provide:

| | | |
|---|---|---:|
| 2 fiberglass double front doors | $ | 478.00 |
| 1 steel rear door | | 215.00 |
| 1 door to garage | | 345.00 |
| Concrete deck under porch | | 727.00 |
| Impact fee, included in contract | | 1,079.00 |
| Mica countertop | | 356.16 |
| Kitchen vinyl flooring | | 155.88 |
| 3 bathroom floors ceramic tile | | 486.00 |
| Foyer ceramic tile | | 567.00 |
| 3 bathroom walls ceramic tile | | 639.00 |
| Ceilings over bathtub | | 250.00 |
| 3 rooms carpet credit | | 2,774.00 |
| Hard board under floors | | 590.00 |
| | | |
| Total Items Missing | $ | 8,662.04 |

13. The Court finds that overpayment of the contract price, together with the total amount for items missing under the contract, constitutes claimants' damages.

| | |
|---|---:|
| Overpayment | $ 28,594.51 |
| Total amount for items missing | 8,662.04 |
| | |
| Total damages | $ 37,256.55 |

■ 14. The debtor argues that extra work was performed and was not included in either the original contract, the Modification Agreement, or the Change Orders, suggesting that the Court make an appropriate adjustment.

15. The contract specifically declares that changes or additional work must be in writing and approved by the claimants. The Court, therefore, rejects the argument that it should adjust the contract amounts.

16. This case commenced on June 3, 1988, and the debtor did not list the claimants as creditors. Claimants did not receive notice from the Court that a bar date for filing claims had been established for October 10, 1989.

17. The claimants obviously were aware that a case had been filed. The Modification Agreement of July 23, 1988, specifically states that a Chapter 11 case was pending. The Court finds that the claimants did not have actual knowledge of the bar date until after it had passed. The Court finds, therefore, that the late filing was due to circumstances beyond claimants' reasonable control and finds excusable neglect.

### Conclusions of Law

■ 1. In determining the amount of the claim, the Court notes that the Supreme Court of Florida has specifically adopted subsection 346(1)(a) of the Restatement of Contracts (1932) for the determination of damages in a breach of a construction contract. *Grossman Holdings Ltd. v. Hourihan,* 414 So.2d 1037 (Fla.1982). The Supreme Court of Florida states that Subsection 346(1)(a) is "designed to restore the injured party to the condition he would have been in if the contract had been performed. This aim corresponds with general Florida law." 414 So.2d at 1039.

2. The *Grossman* holding has been applied in a construction contract dispute in this district. *Matter of Hallmark Builders, Inc.,* 54 B.R. 292 (Bankr.M.D.Fla.1985).

3. In the instant case, the debtor failed to provide $8,662.04 worth of improvements to the claimants' property as provided by the contract. Further, the debtor charged $28,594.51 in addition to the price agreed to under the contract. Thus, the Court concludes that the amount necessary to restore claimants to the condition they would have been in if the contract had been performed is $37,256.55.

■ 4. Having determined the amount of the claim, the Court must now consider whether the claim should be allowed. Bankruptcy Rule 3003(c)(3) provides that the Bankruptcy Court shall establish a bar date and also provides that the Court may in certain circumstances extend the date. It states:

> "Time for Filing. The Court shall fix and *for cause shown* may extend the time within which proofs of claim or interest may be filed." [emphasis added]

5. Courts consider the bar date to be similar in effect to a statute of limitations

for filing of proof of claims which provides a finality for the debtors and creditors in proceedings under the Bankruptcy Code. *In re Norris Grain Co.*, 81 B.R. 103 (Bankr.M.D.Fla.1987). *See, also, In re Wolray Hotels, Inc.*, 99 B.R. 480 (Bankr.M.D.Fla.1989). The Eleventh Circuit Court of Appeals has held that:

"Rule 3003(c)(3) authorizes the Court to extend the time for the filing of a proof of claim for 'cause shown.' This rule must be read, however, in conjunction with Rule 9006(b). [Citations omitted] "Rule 9006(b) provides when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, *for cause shown* may, at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specific period permit the act to be done where the failure to act was the result of *excusable neglect.*

"Rule 9006(b) makes it clear that, when a party moves for an extension of time *after* the expiration of the time period, it must show that its failure to act before the Court's deadline was the result of excusable neglect.

"Courts have interpreted 'excusable neglect' under Rule 9006(b) and its identically worded predecessor, Rule 906(b), as requiring the movant to show that, 'the failure to timely perform a duty was due to circumstances which were beyond the reasonable control of the person whose duty it was to perform.'" [Citations omitted, Emphasis in Original]

*In re South Atlantic Financial Corp.*, 767 F.2d 814, 817 (11th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986).

6. The "excusable neglect" standard of Bankruptcy Rule 9006(b) as it applies to the late filing of a proof of claim pursuant to Bankruptcy Rule 3003(c)(3) has been analyzed in a number of proceedings in other circuits and in the Eleventh Circuit. The inquiry into excusable neglect is relevant to an extension of time for any act that must be performed within a certain time period.

7. The United States Supreme Court, in a pre-Code case, considered a late filed claim by the City of New York against a railroad company in reorganization and stated,

"But even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred."

*City of New York v. New York, N.H. and H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333, *Motion to Modify Judgment denied*, 345 U.S. 901, 73 S.Ct. 639, 97 L.Ed. 1339 (1953). In permitting the City of New York to file its claim after the bar date, the Court implied that knowledge of the proceeding does not put a duty on the creditor to inquire for themselves. It further stated,

"The statutory command for notice embodies a basic principle of justice—that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights."

344 U.S. at 297, 73 S.Ct. at 301.

8. The instant case is most similar to *In re Heater Corp. of the Americas, Inc.*, 97 B.R. 657 (Bankr.S.D.Fla.1989). In that case, unscheduled creditors received actual notice of the bankruptcy case by a Suggestion of Bankruptcy filed in a state court proceeding. However, the creditors failed to file a proof of claim as they received no notice of the bar date. The Court followed *South Atlantic, supra,* and held that the "lack of notice of the bar date" was consistent with pre-code holdings (citing *In re Moskowitz*, 35 B.R. 750 (S.D.N.Y.1983) and *City of New York, supra*) as proof of excusable neglect. The Court found that the claimant proved excusable neglect.

9. In this case, claimants were unlisted and unscheduled creditors who did not receive notice of the claims bar date. The debtor failed to list claimants as a creditor despite the debtor's breach of contract and their negotiations to modify the contract,

culminating in the Modification Agreement, all of which occurred prior to filing for reorganization.

10. In the instant case, the notice of a bar date was mailed only to those creditors that the debtor disclosed to the Court. The providing of the list to the Court was under the control of the debtor, and the debtor knew of the debt when he supplied the list of creditors to the Court.

11. Claimants received no notice that the bar date had been set and had no knowledge that their claim might be barred. Claimants' failure to file a Proof of Claim prior to the bar date was due to circumstances beyond their reasonable control and was the result of excusable neglect.

12. Under Bankruptcy Rule 3003(c)(3), the Court concludes that cause has been shown to allow the late filed claim.

The Court will enter a separate order in accordance with these Findings of Fact and Conclusions of Law overruling the objection and finding that Claim No. 61 should be allowed in the amount of $37,256.55.