**In the matter of DURANGO GEORGIA PAPER COMPANY, Debtor.**

No. 02–21669.

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

July 23, 2004.

Anne L. Blitch, Duane Morris LLP, Atlanta, GA, Frank J. Perch, III, Kate D. Strain, Robert A. Lewallen, Jr., W. Brooks Stillwell, III, Hunter Maclean Exley & Dunn PC, Savannah, GA, George H. McCallum, Watson McCallum, LLP, Macon, GA, Mark D. Johnson, Gilbert, Harrell, Gilber Summerfor, Brunswick, GA, Mark S. Watson, Watson McCallum, LLP, Macon, GA, Neil P. Olack, Duane Morris LLP, Atlanta, GA, Ward Stone, Jr., Stone & Baxter, LLP, Macon, GA, for Debtor.

## ORDER ON MOTION TO ALLOW LATE FILED CLAIM

LAMAR W. DAVIS, JR., Bankruptcy Judge.

Durango Georgia Paper Company ("Durango") consented to an involuntary petition for relief under Chapter 7 of the Bankruptcy Code on October 29, 2002, and converted its case to Chapter 11 on November 19, 2002. On February 23, 2004, James Cunningham ("Cunningham") as Trustee for the Chapter 7 Bankruptcy Estate of United Paper, Inc. ("United") filed a "Motion to Extend Time for Claim Filed" because he did not receive notice of the bar date for filing a proof of claim. A hearing in this matter was held on May 17, 2004. This Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B) & (O) over this core proceeding. Pursuant to Federal Rule of Bankruptcy Procedure 7052(a), I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Cunningham's claim against Durango is based on the fact that United filed a suit against Durango on January 30, 2001, in the United States District Court for the Eastern District of Texas (Sherman Division), The case is currently pending under Cause No. 4:01–CV–29 (the "Litigation"). In the suit, United alleges certain acts of business defamation against Durango. On May 11, 2001, United filed for Chapter 11 bankruptcy relief in the Northern District of Texas (Dallas Division) and was assigned Case No. 01–34001. On May 30, 2002, the case was converted to a Chapter 7 case, On June 20, 2002, Cunningham was appointed the Chapter 7 Trustee, and became vested with the duty to prosecute the

case against Durango for the benefit of United's Chapter 7 estate.

On November 18, 2002, Cunningham was verbally informed of the involuntary petition filed against Durango. On or about December 11, 2002, Durango sent Cunningham's litigation counsel, Beckham and Thomas, a notice of Durango's bankruptcy and the automatic stay. However, nowhere in such notice was United informed of any deadline for filing a proof of claim.

The only bar date notice sent to creditors occurred on November 29, 2002.[1] It set the bar date for filing proofs of claim as March 19, 2003. However, Durango had not scheduled a debt of any kind as payable to United or Cunningham. Thus, they were not listed on the creditor matrix and did not receive notice of the bar date for filing proofs of claim.

Cunningham claims that he first discovered that the bar date had passed in the middle part of April 2003. On May 1, 2003, Cunningham prepared a proof of claim that was delivered directly to Trumbull as directed by Trumbull. Cunningham contends that only later did he learn the claim should have been sent directly to this Court for filing. Upon receipt of the claim, Trumbull forwarded the claim and it was filed with this Court as claim No. 1602 on or about May 23, 2003.

On February 17, 2004, Durango filed its Disclosure Statement accompanying its Joint Amended Plan of Reorganization which provides that creditors, such as Cunningham, who filed claims after the bar date will not be permitted to vote on or receive a distribution under the plan.

Thus, Cunningham prays that this Court enter an order allowing his late filed claim. Specifically, he contends that, in allowing his claim, there is no danger of prejudice to Durango, any delay was minimal, and the potential impact on the judicial proceedings is small. Arguably, Durango's failure to notify him was the primary reason for the delay, and he acted in good faith in filing his claim.

Durango concedes that neither United nor Cunningham received a bar date notice; however, it opposes Cunningham's motion on grounds that he missed the bar date and that his reason for doing so was not excusable. Durango believes that once Cunningham's attorneys were notified of the pendency of the bankruptcy case, Cunningham had a duty of inquiry concerning the bar date. Durango argues that, given his position as a Chapter 7 Trustee, Cunningham should have an appreciation for the importance of filing dates and made a concerted effort to discover the bar date for filing claims.

## CONCLUSIONS OF LAW

Federal Rule of Bankruptcy Procedure 3003(c) sets forth the requirements for filing proofs of claim in Chapter 11 Reorganization cases. It is not necessary for a scheduled creditor or equity security holder to file a proof of claim or interest. *See* Rule 3003(b)(1). However, any creditor or equity security holder whose claim or interest is not scheduled or is scheduled as disputed, contingent, or unliquidated must file a proof of claim or interest. *See* Rule 3003(c)(2). A proof of claim, if required, must be filed by the bar date established

---

1. On December 9, 2002, an Affidavit Regarding Service of Notice of Meeting of Creditors was filed by Brendan Halley as Notice Coordinator for Trumbull Services, L.L.C. ("Trumbull") which serves as an agent of Durango. In such affidavit, Halley certified that he

"caused to be served via first class mail, postage prepaid, on Friday November 29, 2002, the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines ... on the parties listed on [the creditor matrix.]"

by the court. *See* Rule 3003(c)(3). While the claim of United and Cunningham was contingent on the outcome of the litigation in the Eastern District of Texas, neither filed a claim by the bar date of March 19, 2003,

Rule 9006 is a general rule governing the computation, enlargement, and reduction of time prescribed in other bankruptcy rules, including Rule 3003. Rule 9006(b)(1) provides that, "the court for cause shown may at any time in its discretion . . . (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." In *Pioneer Inv. Services Co. v. Brunswick Assocs. L.P.,* 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993), the Supreme Court interpreted Bankruptcy Rule 9006(b)(1) and held that "excusable neglect" is to be determined by reference to a four-factor test.[2] In contrast to the case at bar, the creditors in *Pioneer* received actual notice of the bar date for filing a proof of claim. However, the creditors in *Pioneer* failed to file a timely notice of claim because of a "dramatic ambiguity"[3] in the bankruptcy court's notice to the parties. *Id.* at 398, 113 S.Ct. at 1500.

■ While Cunningham's counsel received notice of the bankruptcy and automatic stay, neither United nor Cunningham was provided with formal notice of the bar date for filing a proof of claim. For this reason, failure to act by Cunning-

ham did not result from neglect. The Supreme Court in *Pioneer* noted that the, "ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to esp[ecially] through carelessness.' " 507 U.S. at 388, 113 S.Ct. at 1494–5 (*citing* Webster's Ninth New Collegiate Dictionary 791 (1983)). The Supreme Court went on to state that, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* Here, Cunningham's failure to file a proof of claim was not the result of inadvertence, mistake, carelessness or an intervening act beyond his control. Instead, Cunningham failed to file a proof of claim because Debtor did not include him in the list of creditors as required by 11 U.S.C. § 521(1) such that he would receive notice of the bar date for filing claims. Accordingly, it is not appropriate to apply the factors enumerated in *Pioneer* and put the burden on Cunningham to demonstrate "excusable neglect."

■ A debtor bears the burden of ensuring that all creditors are listed. *See* 11 U.S.C. § 521 ("The debtor shall—(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities[,]") It is essential that the credi-

---

2. The Supreme Court enumerated the following factors as guideposts for determining what sorts of neglect will be considered "excusable":

　　1.　the danger of prejudice to the debtor;
　　2.　the length of delay and its potential impact on judicial proceedings;
　　3.　the reason for the delay, including whether it was within the reasonable control of the movant; and
　　4.　whether the movant acted in good faith,

*Pioneer Inv. Services Co. v. Brunswick Assocs., L.P.,* 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993).

3. The notice containing the bar date was incorporated in a document entitled "Notice for Meeting of Creditors." After applying the appropriate factors, the Supreme Court upheld the Court of Appeals' finding of excusable neglect and found that the debt in question was not discharged upon confirmation of the Chapter 11 plan.

tor listing is accurate so that the creditors will be given 20 days notice of the time fixed for filing proofs of claim as required by Rule 2002(a)(7).

■ Formal notice of the bar date is of unique and critical importance in a Chapter 11 proceeding. In order to have a general idea of when the claims bar date is in a Chapter 7 proceeding, all that is required is knowledge of when the petition for bankruptcy was filed. That is, Rule 3002(c) requires that the bar date be set at 90 days after the first creditors' meeting. Further, Rule 2003(a) requires that such meeting be held between 20 and 40 days after the petition for bankruptcy is filed. Thus, the cautious creditor who knows only the date of the petition will file his proof of claim within 110 days after that date. However. Chapter 11 proceedings have no such 90 day rule; instead, the bar date is established by the court. *See* Rule 3003(c)(3).

Courts have noted the importance of a creditor being given formal notice of the bar claims date despite knowledge of the bankruptcy. For example, the Supreme Court explained:

> Nor can the bar order against New York be sustained because of the city's knowledge that reorganization of the railroad was taking place in the court. The argument is that such knowledge puts a duty on the creditors to inquire for themselves about possible court orders limiting the time for filing claims. But even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred[.]
> *New York v. New York. N.H. & H.R. Co.,* 344 U.S. 293, 296–7, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953).

In citing *New York* and noting that its language was not grounded in goals unique to the former bankruptcy act, the Eleventh Circuit held that, in regards to a corporate debtor, a creditor's claim is not extinguished if it is not given notice of the bar claims date, even if it has actual knowledge of reorganization proceedings. *See Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms. Inc.),* 863 F.2d 832, 835 (11th Cir.1989).

Other courts have ruled that known pre-petition creditors are entitled to official or formal notice of the bar claims date in a Chapter 11 proceeding even if they have notice of the bankruptcy. *See Levin v. Maya Constr. (In re Maya Constr.),* 78 F.3d 1395, 1399 (9th Cir.1996) ("The fact that a creditor has actual knowledge that a Chapter 11 bankruptcy proceeding is going forward involving a debtor does not obviate the need for notice .... [T]he creditor who is not given notice, even if he has actual knowledge of the reorganization proceedings, does not have a duty to investigate and inject himself into the proceedings."); *In re Twins,* 295 B.R. 568, (Bankr. D.S.C.2003) ("Known claimants are entitled to this formal notice even if they have informal or constructive knowledge of ongoing bankruptcy proceedings."); *In re Premier Membership Services, LLC,* 276 B.R. 709, 714 (Bankr.S.D.Fla.2002) ("[E]ven if [creditor] had knowledge of the bankruptcy proceedings, its claim cannot be barred since there is no evidence that it received actual notice of the Claims Bar Date."). *But see Sequa Corp. v. Christopher (In re Christopher),* 28 F.3d 512, 519 (5th Cir.1994) (holding that postpetition claims were discharged by the confirmation of a Chapter 11 plan when the postpetition creditor received informal notice of the debtor's pending bankruptcy case prior to the claims bar date but did not file a proof of claim). Courts so holding have focused on whether the creditors were

known or reasonably ascertainable by the debtor.

▮ Notice of the time fixed for filing proofs of claim is necessary to guarantee that a creditor is afforded due process before its claim is extinguished. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Here, Durango failed to comply with § 521(1) and Cunningham was not given due process as he did not receive notice of the claims bar date. Further, Durango's failure to comply with § 521(1) was not excused by the fact that Cunningham had knowledge of the bankruptcy case.

▮ Durango has not disputed that it was aware of United's pending lawsuit. Instead, Durango has attempted to shift the blame for failing to file a proof of claim to Cunningham and United. However, Durango's argument must fail because Durango did not provide United and Cunningham with notice of the bar date for filing proofs of claim and actual notice of the pending bankruptcy proceeding does not satisfy the requirements of due process as enunciated in *Mullane.*

At the hearing, Durango pointed out that § 523(a)(3)(B)[4] creates a duty of inquiry concerning bar dates for claims in regard to dischargeability deadlines when the debtor is an individual. While obviously conceding that Cunningham's claim involves distribution and not dischargeability, Durango argued that, for purposes of fairness, the same rule should apply to distribution. However, even in the dischargeability arena, the Eleventh Circuit refused to impose such a duty of inquiry on a creditor when the debtor was a corporation, as is the case here. In *Spring Valley*, the Eleventh Circuit distinguished its holding from *In re Alton,* 837 F.2d 457 (11th Cir.1988) (*per curiam*), where the court held that a creditor with knowledge of the debtor's initiation of the bankruptcy had a duty to inquire about the bar date. The Court in *Spring Valley* found it significant that the debtor in *Alton* was an individual when it stated, "[t]he Spring Valley defendants are corporate debtors. Section 523(a)(3) places a burden of inquiry upon a creditor only when the debtor is an 'individual debtor.' A corporate debtor is not an individual debtor for the purposes of Section 523." 863 F.2d at 834. Because Durango is a corporate debtor, § 523(a)(3) does not apply and there was no burden on Cunningham to inquire regarding the bar date. In summary, because Durango failed to schedule the claim of Cunningham and/or United as required by § 521(1) and Cunningham had no duty of inquiry concerning the bar date, I hold that Cunningham may file his late claim, and the Court will allow the claim as timely filed.[5]

**4.** Section 523(a)(3)(B) states in relevant part that:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an *individual debtor* from any debt—neither listed nor scheduled under section 521(1) of this title … unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.] (emphasis added)

**5.** It should be noted that Cunningham's claim is limited to $250,000.00. On May 12, 2003, Cunningham filed a motion to modify automatic stay to proceed with litigation in the United States District Court for the Eastern District of Texas (Sherman Division), On June 18, 2003, a consent Order was entered on such motion. In that Order, Cunningham's claim was limited to the lesser of the amount of the final judgment against Durango in the litigation or the deductible amount of

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that James Cunningham's Motion to Extend Time for Claim Filed is GRANTED.

$250,000.00. Further, it was agreed that any claim of Cunningham was to be paid pro-rata with general unsecured creditors. Interestingly, Durango consented to Cunningham's motion even though it was filed after the bar date for claims. These facts clearly suggest that Durango was aware of and acknowledged the timeliness of Cunningham's claim such that it would be improper to deny the claim, even if the excusable neglect standard of *Pioneer* is applied.